# South and North Alabama Railroad Company *v.* Williams.

*Action against Railroad Company for Injuries to Stock.*

1. *Burden of proof as to compliance with statutory regulations for running locomotives, &c.*—In an action against a railroad company, for injuries to stock by its cars and engines, the *onus* is on the company to show an observance of all the statutory regulations (Code, §§ 1699, 1700), if the injury occurred at any one of the places named in the statute; and the same principle also applies when the injury was caused by an obstruction on the track of the road at any other place; that is, the injury being shown, and facts proved which, in the ordinary course of events. raise a presumption that some one or more of the active duties imposed by law on the person having charge of the train was called into requisition, the *onus* is on the defendant company to show that he did every thing required of him by law to prevent the injury.

2. *Policy of such statutory provisions.*—The policy of these statutory provisions is to relieve parties, suing in such actions, from the necessity of calling the servants and agents of the railroad company as witnesses on questions involving their own negligence; and this is effected by thus shifting the burden of proof.

3. *Diligence required of railroad engineer.*—An engineer, in charge of a running train on a railroad, should always be on the lookout for obstructions, and when an obstruction is discovered, no matter when or where, should promptly resort to all means within his power, known to skillful engineers, to avert the threatened injury or danger: "less than this is not due diligence."

4. *Contributory negligence.*—Plaintiff's mule having broken loose and escaped from his driver, while camping by night near the highway, and while still loose jumped over the stock-gap of the railroad, into the plantation of another person, where he was run over and killed by the defendant's cars, by night; no question is presented as to the sufficiency of the fence or inclosure of the plantation; nor can contributory negligence be imputed to the plaintiff, either because his mule was loose, or because his driver was guilty of negligence in suffering it to escape.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JAMES Q. SMITH.

This action was brought by Harman C. Williams, against the appellant, a corporation chartered under the laws of Alabama, to recover damages for the alleged wrongful and negligent act of the defendant's agents and servants in killing a mule belonging to plaintiff. The defendant pleaded the general issue, "with leave to give in evidence any special matter of defense; and the plaintiff took issue thereon, with like leave in reply." The facts of the case, as disclosed on the trial, are thus stated in the bill of exceptions:

"On the trial, there was evidence that the mule was the property of the plaintiff, and was worth about $130; also, that on the 25th August, 1879, the plaintiff, who resided on

[South & North Alabama R. R. Co. v. Williams.]

his farm, about twenty miles east of Montgomery, employed one Toney King, who was a witness for plaintiff on this trial, to come to said city with plaintiff's wagon and team of four mules, to get a gin for him, and haul it to his home; that said Toney, while on his way to town, camped for the night of that day (25th August), on the side of the highway, eight miles east of the city; that he tied each of said mules, with a good rope, to the wagon, and went to sleep, and slept until about an hour before day, when he awoke; that soon after awakening, he saw one of the mules (the one mentioned in the complaint) lie down and wallow, and, in wallowing, break the rope with which it was tied, and then get up, and move out slowly into the highway, where it wallowed again; that he then went out into the highway to catch it, but the mule walked off before him on the highway towards Montgomery; that he went back to his wagon and mules, because he was afraid they might be stolen, and remained there until after day-light, and then drove on to the city; that he saw the tracks of the loose mule, all along the highway, until he came within almost three miles of the city, where they were no longer discoverable." King made inquiries for the mule in Montgomery, but could get no information. The plaintiff himself came to the city on the evening of the 26th, and continued to make inquiries for the lost mule "until, on the 27th, or 28th, he was informed that a mule, answering the description of his, had been killed, on said 27th or 28th day of the month, by one of the defendant's trains, within the inclosure and farm of M. C. Scott, about two miles north of said city. Plaintiff then went to said Scott's place, and ascertained the fact that, on the night of the 27th, said loose mule had been killed, or so injured as to cause its death, on the track of the defendant's road, two miles north of said city, and three-eights of a mile within Scott's inclosure, where cotton and corn were then growing. Plaintiff went along the track of defendant's railroad, going north from the city, and discovered the tracks of the mule, south of said inclosure, on the track of said railroad, and where it had jumped the defendant's stock-gap, at the south boundary of Scott's inclosure, and continued on the railroad track, going north, running, for three-eights of a mile within said farm and inclosure, where it was struck by the defendant's train. Said stock-gap was in good order, about ten feet wide, and eight feet deep, with posts projecting along each side of it, at an angle of about forty-five degrees, as usual in railroad stock-gaps."

"The foregoing was, in substance, all the evidence; and upon this evidence, without any more, the court charged the

jury, *ex mero motu,* among other things, that the question of Scott's inclosure and fence, or inclosure around his farm, was one with which the jury had no concern in this case;" to which charge the defendant excepted. The court charged the jury also, on the request in writing of the plaintiff, as follows: "1. In order for contributory negligence on the part of the defendant to constitute any defense, the jury must believe, from the evidence, that such negligence was the cause, in whole or in part, of the injury; and the fact that the plaintiff's mule was at large was not such negligence as, in law, constitutes contributory negligence. 2. The fact that the plaintiff's mule broke loose from his driver, and got away from him, and the further fact that the driver failed to follow the mule, and failed to recover him, is not such contributory negligence as constitutes any defense to this action."

The defendant excepted to each of these charges, and requested the following charges, which were in writing:

"1. If the plaintiff's witness, King, was intrusted by him with his wagon and team of mules to come to Montgomery with them, to get and carry to his house a gin; and if the said King, whilst on his way to Montgomery, on plaintiff's business, and in plaintiff's employment, was guilty of negligence as to the mule mentioned in the complaint; and if that mule was one of said team; and if, without the negligence of said King, the said mule would not have been injured or killed by the engine or cars of the defendant; and if the said negligence of King materially contributed to produce or cause the injury or killing of said mule; then, upon this state of facts, the jury ought to find for the defendant.

"2. If the killing of plaintiff's mule occurred within the farm and inclosure of Scott; if the plaintiff had no interest or ownership in that farm and inclosure; if the mule, at the time it was killed, was on the defendant's railroad track, within said farm and inclosure, and was upon said track without the defendant's consent, and was killed, not willfully, but casually, and without malice, and without any intention to kill or hurt it; then, upon this state of facts, the defendant is not liable for said mule, or for killing said mule."

The court refused each of these charges, and the defendant duly excepted to their refusal; and their refusal is now assigned as error, together with the charge given by the court *ex mero motu,* and the charges given at the instance of the plaintiff.

RICE & WILEY, for appellant.

STONE, J.—Section 1699 of the Code of 1876 exacts certain duties of "the engineer, or other person, having the control of the running of a locomotive on any railroad in this State." Among them is the following: "He must, also, on perceiving any obstruction on the track of the road, use all means within his power, known to skillful engineers (such as the application of his brakes and the reversal of his engines), in order to stop the train." Section 1700 declares, that "a railroad company is liable for all damages done to persons, stock, or other property, resulting from a failure to comply with the requirements of the preceding section, or any negligence on the part of such company or its agents; and when any stock is killed or injured, or other property damaged or destroyed, by the locomotive or cars of any railroad, the burden of proof, in any suit brought therefor, is on the railroad company, to show that the requirements of the preceding section were complied with, at the time and place when and where the injury was done." The proper construction of these sections is, that "in any suit for injuries to property, the burden of proof is on the railroad company, to show that these regulations were observed, if the injury occurred at any one of the places mentioned in the statute."—*S. & N. R. R. Co. v. Thompson*, 62 Ala. 494; *M. & O. R. R. Co. v. Williams*, 53 Ala. 595.

It is not shown, in the present case, that the injury occurred within one-fourth of a mile of a public road-crossing, or depot, or stopping place on the railroad, or within any curve crossed by a public road, on a cut where the engineer can not see one-fourth of a mile ahead, or that the train was entering, passing through, or leaving the corporate limits of a town or city. If it had occurred at any one of the places mentioned, then, by the very letter of the statute, the burden of proof would be cast on the railroad company, to show that the requirements of section 1699 were complied with. We think the same principle applies, and that the burden of proof is cast on the railroad company, where the injury results from an obstruction on the track of the road. As soon as it is perceived, the engineer must use all means within his power, known to skillful engineers, to prevent the injury.

It may be urged, however, that it is not shown the obstruction was perceived by the engineer, and, hence, there can be no imputation of negligence. A mule is a pretty large object. All trains, running at night, carry head-lights, casting a bright light on the track before them; and the engineer, keeping a proper look-out, will perceive so large an obstruction as a mule on the track, some time before encountering it. It then becomes his duty to apply the brakes,

&c. We think the policy of our legislation was and is to relieve plaintiffs, suing for injuries to stock, &c., from the necessity of calling railroad employes, and thus making them witnesses, on all questions which impute negligence to such employes. Hence, .where facts are shown, from which, in the ordinary course of events, a presumption arises that some one.or more of the active duties required by law to be performed by the employe are called into requisition, the shifted burden then takes effect, and the railroad company must make the necessary proof.

To apply this principle to this case : When it is shown that the mule was killed by a train running on defendant's track, this proves the mule must have been on the track when struck by the train. This raises the following inquiries, if not others : Was the mule stationary on the track, or had he just gotten upon it ? At what distance ahead of the train was the mule discovered by the engineer, or could have been discovered with proper watchfulness ? Were the brakes applied, and the engine reversed ? What means were employed to prevent the injury ; and if none were, why were they not employed ? On all these questions, the duty and burden of proof rested on the railroad company. The bill of exceptions purports to set out the substance of all the evidence, and it does not appear that any evidence whatever was offered by the railroad company.

We agree with the presiding judge in the court below, on the facts shown in this record, " that the question of Scott's inclosure and fence, or inclosure around his farm, was one with which the jury had no concern." On the facts shown in this case, the same degree of watchfulness, the same use of means within his power, were demanded of the engineer to prevent the injury, as if it had occurred outside of any inclosure. Engineers, in running trains, should always be on the look-out for obstructions ; and when discovered, no matter when or where, should promptly resort to all means within their power, or known to skillful engineers, to escape the impending danger, or to avert the threatened injury. Less than this is not due diligence.

Except in localities where they have a no-fence law, it is no offense, or violation of law, to permit stock to run at large ; and it does not vary the question, if the stock escaped from the keeper through. his negligence. This cannot enter into the question of contributory negligence. To deprive a party, injured by the negligence of railroad employes, of the right to recover for such injury, the contributory negligence must be proximate,—contributing directly to the injury complained of.—*Tanner v. Louisville and Nashville Railroad Co.*, 60

Ala. 621. The conduct of the driver in this case, even if negligent, is too remote to enter into the question of defense. Under these principles, the Circuit Court did not err in giving the two charges asked by plaintiff, nor in refusing the charges asked by defendant.

The record fails to show any error, and the judgment of the Circuit Court is affirmed.