N. P. BULLOCK v. THE WILMINGTON & WELDON RAILROAD
COMPANY.

*Negligence—Accident at Railroad Crossing.*

1. In an action against a railroad company for the destruction of a portable steam-engine, which had stalled on a crossing, it appeared that the driver, on seeing a train turn a curve about one thousand yards distant, ran up the track, waving a handkerchief, and that the engineer made no effort to stop the train until within about three hundred yards of the crossing, although he noticed the driver waving his handkerchief as soon as he turned the curve, and his fireman called his attention to the obstruction when he was about six hundred yards from the crossing: *Held,* that the engineer was negligent, if, by watchfulness, he could have seen that the road was obstructed in time to stop his train before reaching the crossing.

2. Where it appeared that plaintiff's driver went on the track to see whether any train was approaching before he attempted to cross, the fact that he did not examine the crossing and that he did not look at his watch to see whether it was about train time, does not constitute such contributory negligence as will prevent plaintiff from recovering, it appearing that the stalling would not have occurred if the crossing had been in good condition.

This was a CIVIL ACTION, tried at the Fall Term, 1889, of the Superior Court of EDGECOMBE County, before *Boykin, J.*

The plaintiff, in his first cause of action, alleged that he was the owner of a portable steam-engine and boiler, which he was attempting to have drawn across defendant's track by two teams of oxen, when defendant's servant negligently ran an engine and train over said portable engine and boiler. In the second cause of action, he alleged that it was the duty of the defendant to keep up a certain crossing over its track, and defendant neglected to do so, in consequence of which said engine and boiler were injured in the attempt to transport them over said road at said crossing.

The defendant denied generally each allegation of the first cause of action, except the allegation as to the existence of the corporation, and set up contributory negligence. In answer to the second cause of action, the defendant admitted the obligation to keep the crossing in repair, denied negligence and charged contributory negligence.

The issues and findings were as follows:

1. Was the steam-engine and boiler mentioned in the complaint injured by the negligence of the defendant?

Answer—Yes

2. What damage has the plaintiff sustained?

Answer—$600.

The plaintiff claimed damages for the destruction of his portable steam-engine by the negligence of the defendant.

George W. Harper, a witness for plaintiff, testified: "I was ginning cotton for Bullock last fall with a portable

engine drawn by four oxen. On the 25th day of October, 1888, I was driving the same, with the assistance of three men, from a point in Edgecombe to a point in Nash County, when I had occasion to cross the line of the defendant's railroad track at a public crossing known as Trevathan's Crossing. As I approached the crossing, I stopped the team and went upon the track to see if any train was coming from any direction; I could have seen a train more than a thousand yards in the direction of Battleboro; I have measured it since then, and a man standing on the track at the Trevathan Crossing can be seen by another standing on the track one thousand and seventy yards North of that point. I had been working in the neighborhood for some time, and knew the time the South-bound train usually passed that point; I had a watch with me that day, but did not look to see the time; I think the train was behind time this day, and I thought it had passed when I reached the crossing; I went upon the track to see if there was any train coming from any direction; frequently there were special trains. Neither seeing nor hearing any train, I then undertook to cross the track. The crossing was very bad; the approach to the track on the Edgecombe side was slightly elevated, and the rise from the level of the ground to the top of the railroad iron was about nine inches. The team pulled the first wheels of the engine over the nearest rail, and when they struck the further rail, and the hindmost wheels the first rail, the engine got stalled. I had no time to try and get the team over, because just at this time I saw the South-bound train, coming from the direction of Battleboro, turn the curve one thousand and seventy yards distant, and I thought it best for me to run up the track and wave down the train. I at once ran up the middle of the track in the direction of the approaching train, waving a red handkerchief over my my head. The train did not slacken in its speed until within about one hundred yards of the crossing,

when the engineer jumped from the engine on the right and a colored man jumped on the left; after knocking the obstruction off the track the hindmost car stopped at the crossing. The oxen were in good order; they had only come about a mile that day, and I thought they could pull the engine across without much difficulty; they had often pulled out of worse places, and had frequently pulled over 'railroad crossings.' "

The plaintiff offered other testimony to the effect that the crossing was in bad condition; that the rise from the level ground to the top of the railroad iron was from six to eleven inches; that the crossing was, in effect, no crossing; that one of the witnesses had had occasion to put planks in the crossing in order to haul cotton on, and had found it bad for crossing with light vehicles; that the engine weighed twenty-seven hundred pounds; that an engineer could have seen the team and engine stalled upon the track as soon as he turned the curve, which was estimated by one witness, who had not measured it, as from six to eight hundred yards; by another, who had stepped it, as eleven hundred and fifty yards; and by two, who had actually measured it, it was said to be one thousand and seventy yards; that as soon as the engineer turned the curve he could have recognized that the team and the engine upon the track were stalled; that when within about one hundred yards of the crossing, the engineer reversed the engine, applied all means to stop the train, and jumped from the engine.

It was in evidence, on the part of the defendant, from the testimony of the section-master of the defendant's road, of the attorney of the road, who visited the crossing a few days after the accident, and of several other employes of the road, that the crossing in question was in good condition—as good as the other crossings upon the same section of road.

It was testified to by the engineer in charge of the train, that as soon as he turned the curve he saw the obstruction

upon the track, and the man running up the track waving his handkerchief; th t he had been running trains on the defendant's road for seventeen years, and that he did not know whether the curve was two hundred or twelve hundred yards from the crossing; that he blew the regular signal at the whistle post, which was some three hundred or three hundred and fifty yards from the crossing; after that he blew the cattle signal and then reversed the engine, and used every appliance to stop the train; that, seeing it was then impossible to stop the train, he jumped off the engine; that the train was equipped with the best appliances known to science, and the train could not have been stopped in less than three hundred and fifty or four hundred yards; was on schedule time and going thirty-five miles per hour. It was in evidence by the fireman that he called the engineer's attention to the obstruction on the track when six hundred yards distant from it.

Counsel for the defendant requested the Judge to charge the jury—

1. That in law, if the jury believed the evidence introduced in behalf of the plaintiff, he is guilty of contributory negligence and is not entitled to recover in this action.

2 That when the engineer of defendant's train first saw the team of oxen and vehicle upon the railroad track, the law did not require him to stop or slacken the speed of the train until he realized the team of oxen and vehicle were stalled or could not get off the track.

3. That if you believe the defendant's engineer did all in his power to stop the train, and at once, when he realized that the team of oxen and engine were stalled, the defendant was not guilty of negligence, and plaintiff cannot recover.

4. That if the engineer, so soon as he saw the man on the track waving at him, did everything in his power to stop the train, the defendant was not guilty of negligence, and plaintiff cannot recover.

The Court gave the third prayer, and, among other things, charged the jury—

That it was required of the plaintiff, his agents and servants, that they should exercise due and proper caution in crossing, or attempting to cross, the defendant's track, to learn whether there were any approaching trains, and to notice the condition for safety of the railroad crossing. If the crossing was in such condition as to suggest to a man of ordinary prudence and caution, under all the circumstances of the case, and considering the distance at which approaching trains could be seen, the difficulty or danger of attempting to cross with such a team and such a burden, then it was their duty to forbear, and their entering upon the track under such circumstances would make the plaintiff guilty of contributory negligence; and if the engineer of defendant company, in the exercise of reasonable care, was unable to avoid the accident, then the plaintiff would not be entitled to recover. If, when the engineer first discovered that the team and engine on the track were stalled (the plaintiff having entered upon the track under such circumstances as made him guilty of contributory negligence as above stated), he exercised reasonable care and made use of the means in his power to stop the train and avoid the accident, but failed to do so because the want of space or the down-grade of the road, then the defendant would not be liable. But, if the defendant's engineer saw the team and engine stalled upon the track in full time to have avoided the accident by the reasonable use of the means within his reach, but delayed too long their application, and accident thereby resulted, then the plaintiff is entitled to recover. The fact that plaintiff was chargeable with contributory negligence in entering upon the track, if you should so find, does not necessarily preclude the plaintiff from recovering; for notwithstanding the plaintiff's negligence in going upon the track, he would still be entitled to recover, if the defendant's engineer could

have avoided the accident by the exercise of reasonable care, as before explained.

The jury answered both issues in favor of the plaintiff. Motion for a new trial;· motion denied.

The defendant assigned—for, 1st, Error in the refusal of the Court to give the instructions asked; 2d, Error in the instructions given.

From the judgment rendered, the defendant appealed.

*Mr. Donnell Gilliam* (by brief), for plaintiff.
*Mr. John L. Bridgers* (by brief), for defendant.

AVERY, J.—after stating the facts: When a person in charge of a wagon and team approaches a public crossing, at which he proposes to pass over a railway track, it is his duty, even though no train is expected at that hour, to look and listen and take every precaution that prudence would suggest to avoid a collision.    Wood's R. L., p. 1302.

According to the undisputed testimony, the witness who was in charge of the wagon went upon the track, in person, without venturing with the team, and, looking in the direction from which the train that injured the engine subsequently came, saw the line clear for more than a thousand yards to a curve (which was, in fact, afterwards ascertained by measurement to be one thousand and seventy yards distant from the crossing).

The defendant company contends, not without reason, that if, in the view of the testimony most unfavorable to the plaintiff, his negligence did contribute, or might have contributed, concurrently with that of the defendant, to cause the injury, the Court should have given the jury such specific instruction as was necessary to apply the law to that particular phase of the testimony, if requested to do so by the counsel of the company.   This principle, it is insisted, can be applied, if we suppose—considering some portions of

the testimony offered on both sides to be true—that the plaintiff's agent, after seeing that there was no train as near as the curve, drove his team upon the crossing without looking at his watch, when a glance at it would have notified him that it was about the time when the train usually passed, and when he knew, or, by examination, might have ascertained the condition of the crossing, and especially that, in order to draw the wagon containing the engine across the track, the wheels must overcome a perpendicular rise of nine inches.   The company admits in its answer the duty of keeping the crossing in good condition, and, upon the hypothesis which we are now assuming to be true, was guilty of negligence in failing to repair it.   Wood's R. L., § 420; *Gray* v. *Railroad Co.*, 36 Iowa, 112.   The defendant company will not be allowed to excuse the negligent running of its trains if its engineer was shown to be in fault in destroying an engine detained on the crossing on account of its own omission to make the public highway passable.   The plaintiff's agent was not wanting in ordinary care because he did not inspect the crossing to see whether the company had discharged its duty before venturing upon it, nor is the single circumstance that he failed to look at his watch sufficient to show culpable imprudence, because he could have passed over safely if the crossing had been in good condition. Where a teamster crossed a bridge that he actually knew to be somewhat unsafe, but which the county officers had not closed or warned people not to pass, it was held by the Supreme Court of Pennsylvania that he was not in fault and could recover for injuries sustained thereby.   *Humphrey* v. *Armstrong*, 56 Penn., 204; *Alger* v. *Lowell*, 3 Allen, 402; *Robinson* v. *Proche*, 5 Cal, 460.

Wood, in his work on Railway Law (§ 323, p. 1314), says: "If a person, in crossing a railroad track, in the exercise of due care *as to approaching trains, through no fault of his, gets the wheels of his vehicle caught in the track so that he cannot*

*extricate them in season to avoid injury* from an approaching train, he is not *chargeable with such negligence as will preclude a recovery* for injury to his team, *if he properly endeavors to cause the train to be stopped.*" *Railroad Co.* v. *Dunn*, 56 Penn. St., 280; *Milwaukee Railroad Co.* v. *Hunter*, 11 Wis., 160.

The engineer testifies that he saw Harper running up the track waving his handkerchief as soon as he turned the curve (one thousand and seventy yards from the crossing), and the fireman states that he called his attention to the obstruction six hundred yards from the crossing. This is in accord with Harper's statement that he ran up the road, making the signal to stop, so soon as he discovered that the team was *stalled.*

Instead of leaving the question of contributory negligence to the jury at all, his Honor might have told them that the plaintiff had not, in any aspect of the evidence, contributed, by his own want of care, to cause the injury sustained. As the erroneous instruction was favorable to the defendant, it is unnecessary to analyze or discuss so much of the charge as relates to contributory negligence

There may be mutual negligence, and still one party may maintain an action against the other. When a man negligently lies down and falls asleep in the middle of the public road, and another, who sees him, failing to exercise ordinary care, drives over and injures him, an action will lie for the injury. *Kerworker* v. *Railroad Co*, 3 Ohio St., 172; *Davies* v. *Mann*, 10 Mees & W., 545   It is upon this principle that his Honor acted in instructing the jury. The authorities fully sustained him in the position, that even if the plaintiff did not exercise due caution in venturing upon the track under all the circumstances, still the defendant was liable to answer in damages for the injury sustained, if by the exercise of ordinary care on the part of its servants it might have been prevented. *Gunter* v. *Wicker*, 85 N. C., 310; *Troy* v. *Railroad Co.*, 99 N. C., 298; *Farmer* v. *Railroad Co.*, 88 N. C.,

564; Shearer & Redfield on Neg., sec. 36; Cooley on Torts, 679; *Blaine* v. *C. & O. Railroad Co.*, 9 W. Va., 252; *B. & O. Railroad Co.* v. *State*, 33 Md., 542.

It is the duty of an engineer, when running his engine, to keep a constant "lookout for obstructions, and when an obstruction is discerned, no matter when or where, he should promptly resort to all means within his power, known to skillful engine-drivers, to avert the threatened injury or danger." Woods' R. L, sec. 418, p. 1548; *S. & N. Ala. Railroad Co* v. *Williams*, 65 Ala., 74; *Ibid* v. *Jones*, 66 Ala., 507. If the engineer, so soon as he discovered that the wagon was detained upon the track and could not, for the time, get out of the way, or so soon as with *proper care and watchfulness he would have had reason to think such was its condition*, had used every means and appliance in his power to stop the train, the defendant would not have been liable. But the Judge omitted to tell the jury that it was negligence on the part of the defendant, if the engineer could have seen, by watchfulness, though he did not in fact see, that the road was obstructed in time to stop his train before reaching the crossing. *Carlton* v. *Railroad Co.*, 104 N. C., 365; *Wilson* v. *Railroad Co.*, 90 N. C., 69; *Snowden* v. *Railroad Co.*, 95 N. C., 93. The defendant could not complain of this error.

It is true that, ordinarily, an engineer has a right to assume that one who has time will get out of the way, but he is not warranted in acting upon this assumption after he "has reason to believe that he is laboring under some disability, or that he does not hear or comprehend the signals." *French* v. *Phila. Railroad Co.*, 39 Md., 574. Counsel for the defendant, in his brief, states that there was testimony tending to show that the curve was only two hundred yards from the crossing; but we cannot look beyond the case on appeal, and there it appears that the witnesses estimated the distance at from six hundred to twelve hundred yards, two swearing that they measured, and one that he stepped it,

and made it over one thousand yards. The engineer testified that *he did not know* whether it was twelve hundred or two hundred yards  That was not evidence to show that the distance did not exceed the shorter distance mentioned by him. The engineer testified that he saw the obstruction on the track as soon as he turned the curve, and at the same time saw the man running up the track making the signal, and that he could have stopped his engine by the use of the appliances at his command within three hundred and fifty yards. It would seem that he had sufficient reason to believe that those in charge of the team had encountered some difficulty, when he saw it on the track, and the witness Harper running and waving his handkerchief. But if that were not so, the fireman testified that he called the attention of the engineer to the obstruction when he was six hundred yards from the wagon, and when, according to his own estimate, he might have stopped his train two hundred and fifty yards short of the crossing. But he went on, according to his own testimony, within some three hundred or three hundred and fifty yards, but, as the result proved, too far to save the plaintiff harmless.

Applying the law to this state of facts, it would seem that the plaintiff might have complained of his Honor's charge as to the liability of the defendant by reason of its own negligence, but, like the instruction relating to contributory negligence, it was more than fair to the defendant. The defendant company has failed to point out any error that entitles it to a new trial. There is no error.

Affirmed.