The issues were —
1. Was B. F. Deans killed by the negligence of the defendant?
2. Did he, by his own negligence, contribute to his death?
3. What damage, if any, is the plaintiff administratrix entitled to recover?
The plaintiff introduced the following evidence:
W. A. Deans testified that deceased was between thirty-three and thirty-four years old. "I went to the scene of the accident about 2 p.m. — half an hour after it occurred. The train usually passed that spot about 12 m. I found B. F. Deans (plaintiff's intestate) lying on the ground across the ditch, about ten feet from the track; his head was smashed to pieces, and there were signs on the rails of his having been run over on the side of the track on which the engineer sat in his cab. It is two miles from Goldsboro to the first curve in the road. The place where he was killed was between 300 and 400 yards from the first curve towards Goldsboro; there is gravel of a light color on the footpath on the outside of the rails, and people walk there. It was a showery day. I think I could have seen a man three-quarters of a mile off. Deceased had on a dark overcoat, but I don't recollect the color of his pants. The path I spoke of is between the ditch and the end of the cross-ties, and the roadbed is gravel, with a white sandy gravel. I don't know that it was slippery where he was killed." Witness further testified as to the value of the life of the intestate.
On cross-examination, the witness stated that deceased drank whiskey at times, he was not a drinking man during crop time, but after the crops were laid by, and he had realized therefrom, he would sometimes get on a spree, especially about the Christmas holidays, but did not get drunk every time he came to town. "When I got to his body on the day of the accident, to wit, 24 December, 1887, one Pate had (688) a small bottle of whiskey, and it looked as if about a drink had been taken out, and there was a broken glass on the ground which had the smell of whiskey about it. Deceased lived about a mile from the railroad. There is a county road running parallel from Goldsboro in that direction, to the deceased's house, which is a little nearer than the path" (above described).
P. Taylor testified: "On 24 December, 1887, I was engaged at the water station of defendant company; saw deceased early that morning *Page 470 
pass the station, going to town; people pass that way; he came back between 1 and 2 p.m., and I had some talk with him — say about twenty-five minutes; he went towards home on the railroad, and I went into the section house and sat down; the last time I saw him he was lying on the roadbed, before the train came, with his feet towards the ditch; I looked towards town, and saw the train coming between the station and water tank; when the engineer (Morris) came along I motioned to him three times; he was sitting in his seat, looking at me, when I motioned, but he did not seem to understand what I meant; I was standing on the ditch bank." (witness motioned by raising his hand toward the engineer, who was looking out of the window of his cab.)
On cross-examination: "I think deceased was about three-quarters of a mile from me when I saw him; it had been raining some, the wind was blowing — a cold, rainy day, but not freezing; but a man could see very well, though it was a cloudy day; the rails were wet. When deceased left me near water station, I saw him about a hundred yards from me, walking on the narrow path outside the cross-ties; he had a pint tickler of liquor, and offered me some, but I would not drink; it was about two-thirds full, and he seemed to have been drinking, but seemed to know his business; he walked steadily when he left me; he took a drink at the water station, and another when he left me, (689) in about fifteen minutes; the train that killed him did not stop at the water tank; I think the train was running about twenty miles an hour; have seen trains run much faster; never saw any one motion to the engineer; I knew the engineer; had been at the water tank about twelve months, and as the train passed that day the engineer blew his whistle when it got near to deceased; I could not see the deceased when the whistle blew; when I last saw him he was lying across the roadbed, not between the rails, but between the ends of the cross-ties and the ditch; I did not see his head on the rail; if I had, I would have signaled down the engineer, and stopped the train; I would have done this by placing my hat on the track; I did not do that because I did not know his head was on the track."
Upon the conclusion of the plaintiff's evidence his Honor intimated that he would instruct the jury to find the first issue in the negative, and, in difference thereto, the plaintiff submitted to a nonsuit and appealed.
When this Court, in Gunter v. Wicker, 85 N.C. 312, adopted the rule laid down in Davies v. Mann, 10 M. W. (Exc.), 545, that "notwithstanding the previous negligence of the plaintiff, *Page 471 
if, at the time when the injury was committed, it might have been avoided by the exercise of reasonable care and prudence on the part of the defendant, an action will lie for damages," it was thenceforth aligned with one of two classes, holding widely divergent views as to the effect of contributory negligence on the part of a plaintiff, under certain circumstances, upon his right of recovery. That ruling has been expressly approved in a large number of later cases, and is now firmly grounded as a part of our system, in so far as it is distinct from (690) that of any other courts where the common law of England prevails.Farmer v. R. R., 88 N.C. 564; Turrentine v. R. R., 92 N.C. 638;Aycock v. R. R., 89 N.C. 321; Troy v. R. R., 99 N.C. 298;McAdoo v. R. R., 105 N.C. 140; Daily v. R. R., 106 N.C. 301; Lay v.R. R., 106 N.C. 404; Bullock v. R. R., 105 N.C. 180; Carlton v. R. R.,104 N.C. 365; Wilson v. R. R., 90 N.C. 69; see also, Wymer v. Wolf, 52 Iowa, 533; R. R. v. Kellon, 92 Ill. 245; Meeks v. R. R., 56 Cal. 513;Kenyon v. R. R., 5 Hun (N. Y.), 479.
In those States where the very opposite view was taken, it was held that where one went upon the track of a railroad company at a point other than a crossing where the public have a right-of-way, without special license, he was a trespasser, and could not recover for any injury inflicted upon him through the negligence of such company's agents or employees, unless it was wanton. Mulherrin v. R. R., 81 Penn., 366; Rounds v. R. R., 64 N.Y. 129;R. R. v. Sinclair, 62 Ind. 301; Donaldson v. R. R., 21 Minn. 293; Beach on Con. Neg.; Express Co. v. Nichols, 33 N. J., 434.
In delivering the opinion in Manly v. R. R., 74 N.C. 655, JusticeBynum foreshadowed, by an intimation the subsequent adoption by this Court, in Gunter v. Wicker, supra, of the principle stated in Daviesv. Mann, supra, and after it had been approved in so many well-considered opinions, it became apparent that it would be illogical and inconsistent to adhere to the rule laid down in Herring v. R. R., 32 N.C. 402, or the interpretation generally given to Judge Pearson's language by the leading text-writers of this country. In that case, the engineer might have seen two little negroes who were lying on the track asleep, according to conflicting testimony, from two hundred yards to a half mile, before his engine reached them. He did not actually discover that the children were asleep till he was within twenty-five (691) or thirty yards of them. The testimony showed, also that the train could have been stopped by the engineer within from seventy-five to one hundred yards. The judge below charged the jury that the railroad company was not liable for the neglect of the engineer to keep a lookout along the track except when he was approaching a crossing of a public road over the railway, and was not responsible for his failure to use the *Page 472 
appliances at his command to stop the train until he actually saw the children asleep on the track at a distance of twenty-five or thirty yards. This instruction was sustained by the Court in the face of the fact that the counsel for the plaintiff cited and relied upon Davies v. Mann, supra. The Court failed even to advert to the doctrine laid down in that case.
It must, therefore, have been the settled purpose of this Court, when the doctrine of Davies v. Mann was approved, to modify this rule whenever the point should be plainly presented, and that contingency has never arisen until the present time. We have reiterated the principle that where an engineer sees a human being walking along or across the track in front of his engine, he has a right to assume, without further information, that he is a reasonable person and will step out of the way of harm before the engine reaches him. McAdoo v. R. R., 105 N.C. 153; Daily v. R. R., supra;Parker v. R. R., 86 N.C. 221. It is not negligence in an engineer to act, in the absence of specific information, on the presumption that a man who is apparently awake and is moving is in full possession of all of his senses and faculties.
But it has been repeatedly held by this Court that it is the duty of an engineer, while running an engine, to keep a careful lookout along the track in order to avoid or avert danger in case he shall discover any obstruction in his front, whether at a crossing or elsewhere. (692) Bullock v. R. R., supra; Carlton v. R. R., supra; Wilson v. R. R., supra.
If the engineer discover, or by reasonable watchfulness may discover, a person lying upon the track, asleep or drunk, or see a human being who is known by him to be insane or otherwise insensible to danger or unable to avoid it, upon the track in his front, it is his duty to resolve all doubts in favor of the preservation of life, and immediately use every available means, short of imperiling the lives of passengers on his train, to stop it. R. R. v. Miller, 25 Mich. 279; R. R. v. St. John, 5 Sneed (Tenn.), 504; R. R. v. Smith, 52 Tex. 178; Isbell v. R. R., 27 Conn. 393;Meeks v. R. R., 56 Col., 513. For similar reasons we have held that the test of negligence where livestock is killed or injured by a train is involved in the question whether the engineer, by keeping a proper lookout, could have discovered the animal in time to have prevented the injury.Carlton v. R. R. and Watson v. R. R., supra. In Bullock v. R. R., the same criterion was applied where it was alleged that an engineer might have discovered that a wagon was stalled at a crossing, in time to prevent injury by stopping his train.
The pertinent portions of the testimony in the case before us may be gathered and grouped as follows, bearing in mind always that if, in the most favorable aspect for the plaintiff, there was a question raised that *Page 473 
it was the exclusive province of the jury to determine, then there was error. A witness on the roadside could see plaintiff's intestate lying on the side of the track three-fourths of a mile distant. He could not tell, from his position and at that distance, whether he was lying across the rail, but thought his head was on the roadbed beyond the ends of the cross-ties. When the engineer was passing, the witness waved his hand at him as a signal to be watchful. The engineer looked, but did not seem to comprehend what was meant. The train was running at the rate of about 20 miles an hour. The witness who made the signal had been engaged at the water tank for about eleven months and had been often seen there by the engineer, but had not made his (693) acquaintance.
Could the engineer by ordinary care have seen that the plaintiff's intestate was lying apparently helpless upon the track, with his head inside the rail, in time to have stopped the train before it reached him? Defendant's counsel contended that there was no testimony offered to show within what distance the engineer, using all available appliances, could have stopped the train, and, therefore, the jury could not consider the question whether he could have avoided inflicting the injury. With the data furnished by the evidence, it was the province of the jury, either with or without additional light from expert witnesses, to determine how many feet or yards of track the train must have traversed after the engineer reversed his engine and blew brakes before he could have put a complete stop to its movements without damage to those on the train. The jury were at liberty to exercise their own common sense and to use the knowledge acquired by their observation and experience in everyday life in solving the question whether the engineer, in the exercise of due diligence, might have discovered, from his elevated position on the engine, the fact that plaintiff's intestate was lying helpless across the rail, and whether by prompt and strenuous effort he could have saved his life without putting his passengers in jeopardy. R. R. v. Miller, 25 Mich. 292; Nerbus v. R. R., 62 Cal. 322. Courts and juries acting within their respective provinces must take notice of matters of general knowledge and use their common sense where the evidence makes the issue of law or fact depend upon their exercise. Best Ev., 262, note F; Wood Railways, 1064, note.
If the facts had been undisputed, and such that only one inference could have been drawn from them, it would have been the duty of the court to decided whether there was negligence. But, upon the testimony before them in this case, the judge should have left (694) the jury to say whether they could deduce satisfactorily from the evidence the inference that the engineer discovered, or could by ordinary care have discovered, that plaintiff's intestate was lying, apparently *Page 474 
insensible, upon the track, in time to have avoided the injury, or whether they thought a preponderance of testimony was in favor of the inference that defendant's employees could not have averted the accident by exercising the diligence required by law. Smith v. R. R., 99 N.C. 241;Troy v. R. R., 99 N.C. 298; R. R. v. Picksley, 21 Ohio, 654. Men of fair and reasonable minds might have drawn different conclusions from the evidence in this case, although there is no material conflict between the testimony of the witnesses examined, and, therefore, the jury should have been allowed to determine whether the engineer might have ascertained, by keeping a proper lookout, the real condition of the deceased, admitting even that he was drunk, and by timely exertion have saved him harmless, without peril to the passengers or other persons on the train. 2 Thompson on Neg., 1178 and 1179; Wood Railways, sec. 319, p. 1259.
Judge Cooley (on Torts, p. 670) says: "If the case is such that reasonable men, unaffected by bias or prejudice, would be agreed concerning the presence or absence of due care, the judge would be quite justified in saying that the law deduced the conclusion accordingly. If the facts are not ambiguous, and there is no room for two honest and apparently reasonable conclusions, then the judge should not be compelled to submit the question to the jury as one in dispute."
The rule applicable to our case is, that though the facts may be undisputed, yet if two reasonable and fair-minded persons might draw inferences from them so different that, according to the conclusion of fact reached by one, there would be negligence, while that deduced by (695) another would show the exercise of ordinary care, then the issue should be submitted to the jury.
We think that his Honor erred in declaring the testimony insufficient, in any aspect of it, to warrant the inference on the part of the jury that the defendant might have prevented the injury by the exercise of ordinary care. There must be a
New trial.
Cited: Browne v. R. R., 108 N.C. 42; Meredith v. R. R., ib., 618; Wardv. R. R., 109 N.C. 360; Clark v. R. R., ib., 442, 444, 445, 451, 453;Hinkle v. R. R., ib., 474; McQuay v. R. R., ib., 588; Emry v. R. R., ib., 596, 611; Emry v. Nav. Co., 111 N.C. 102; Norwood v. R. R., ib., 240;Mason v. R. R., ib., 493; Cawfield v. R. R., ib., 600; S. v. Taylor, ib., 681; High v. R. R., 112 N.C. 388; Mason v. Lumber Co., 114 N.C. 723;Smith v. R. R., ib., 739, 769; Gilmore v. R. R., 115 N.C. 662; Comrs. v.Lumber Co., 116 N.C. 735; Sherrill v. Tel. Co., 117 N.C. 361; Pickettv. R. R., ib., 631; N.C. Chesson v. Lumber Co., 118 N.C. 69; Lloyd v.R. R., ib., 1013; Baker v. R. R., ib., 1020; Tillett v. R. R., ib., *Page 475 
1041; Styles v. R. R., ib., 1089; Pharr v. R. R., 119 N.C. 756; Purnellv. R. R., 122 N.C. 848; Norton v. R. R., ib., 935; Whitley v. R. R., ib., 989; Bradley v. R. R., 126 N.C. 741; Wright v. R. R., 127 N.C. 227;McArver v. R. R., 129 N.C. 384; Lea v. R. R., ib., 463; Davis v. R. R.,136 N.C. 117; Sawyer v. R. R., 145 N.C. 27; Daniel v. R. R., ib., 55;Rollins v. R. R., 146 N.C. 157; Jenkins v. R. R., ib., 181; Whitfield v.R. R., 147 N.C. 240; S. v. R. R., 149 N.C. 478; Snipes v. Mfg. Co.,152 N.C. 45, 47; Haire v. R. R., ib., 764; Edge v. R. R., 153 N.C. 215;Cabe v. R. R., 155 N.C. 411; Hanford v. R. R., 167 N.C. 278; Norman v.R. R., ib., 41; Hill v. R. R., 169 N.C. 741; Davis v. R. R., 170 N.C. 586;Horne v. R. R., ib., 652; Brown v. R. R., 172 N.C. 607; McManus v.R. R., 174 N.C. 737; Borden v. R. R., 175 N.C. 178; Costin v. PowerCo., 181 N.C. 204.