The evidence tended to show that defendant was a manufacturing company, operating a logging road under a charter, etc., and that on 21 June, 1907, plaintiff, employed as fireman on defendant's engine, was run over by said engine and seriously injured; that at the time of the occurrence the engine in question had stopped at a trestle which was being repaired, and the engineer and plaintiff, and others of the crew, went forward fifteen or twenty feet on the trestle to observe the work and note its progress; plaintiff sat down on a cross-tie, and he and the engineer were both talking to some of the track force; that while plaintiff was so engaged, the engineer went back to his (43) engine, started it without signal or warning of any kind, and moved the same upon the plaintiff before he was able to arise or escape, and causing the injuries complained of; the track was straight, and the position of plaintiff at the time being in full view or readily observable.
The plaintiff, a witness in his own behalf, among other things, testified as follows:
Q.: State whether in June, 1907, you were in the employ of the Camp Manufacturing Company. A.: Yes, I was.
Q.: What were you doing? A.: I was firing an engine for them in 1907.
Q.: What was the Camp Manufacturing Company doing with this engine? A.: Hauling logs out.
Q.: On their private road? A.: Yes.
Q.: Who was engineer under whom you were firing? A.: Mr. Lonnie Spivey. *Page 41 
Q.: State to the court and jury whether or not you were injured about 21 June, 1907. A.: On 21 June, 1907, the train ran over me: I was on the trestle.
Q.: State how you came to be on the trestle, and the entire facts and circumstances. A.: I was firing the engine in 1907, June 21st, and they went down hill to a good long trestle, and the engineer, of course, he stopped; he had a signal to stop. He got down and went in front of the engine and was talking with one of the section boys, and I got down off the engine and went between him and the engine, and I sat down between the rails — straddled a cross-tie, with my feet hanging down. There was a pair of mules in front of me and all of the hands, I can't tell how many; I wasn't paying any attention to anything else. Mr. Spivey and Mr. Butts passes right by me and gets on the engine; I was there running on with them, talking while they were working, and Mr. Spivey and Mr. Butts gets up and goes to the engine — pass right by me — and Mr. Spivey didn't say, come on he was going, or nothing; he never blowed whistle nor rung the bell or gave a signal; he just moved the engine off over to where they were hauling, and when I saw the engine she was within five or six feet of me; I got up, I was so scared, and I didn't know any more after I got up.
Q.: What did the engine do to you at the time it struck you? A.: She ran over me.
Q.: How did it run over you? A.: It just knocked me down; my feet went through the trestle and the pilot pushed me down and rolled me across the ties until I got to the place where the ties didn't give way or anything, and they had to back the engine off me. I was stopped by those ties.
Q.: How did it injure you? A.: It broke my right ankle (44) and broke me in two — twice in my breast; it broke three ribs in my breast and six in my back and my right shoulder blade.
Q.: Describe what was hatched to the engine, if anything. A.: Nothing at all; just the engine and tender.
Q.: When you got off the engine and sat down on the track, about how far in front of the engine was it that you sat down. A.: About fifteen or twenty feet.
Q.: How near was the engine to you when you saw it moving up on you? A.: About five or six feet.
Q.: How were you sitting at the time when you first saw that engine moving upon you — what was your position on the track? A.: I was sitting straddled of one of the ties, with my feet hanging down over the trestle. *Page 42 
Q.: Where did you say the team of mules were working? A.: They were working right in front of me.
Q.: What kind of work were they doing? A.: They were working on the trestle doing something; the mules were dragging some longs.
Q.: Where was your attention directed — which way were you looking? A.: I was looking right down at the mules and the men that were working.
Q.: About how high was the trestle? A.: It was about six or seven feet.
Q.: You say the engineer got up and passed by you? A.: Yes.
Q.: Was he going towards the engine? A.: Yes sir.
Q.: Had he been sitting or standing? A.: I couldn't tell whether he was standing or sitting.
Q.: Did you see him any more after he passed by you? A.: No, sir.
Q.: You didn't see him get up on the engine? A.: No, sir.
Q.: What did he say to you when he passed by you? A.: Nothing at all.
At the close of plaintiff's evidence, on motion, plaintiff was nonsuited by order of court, and excepted and appealed.
The Court is of opinion that on the facts and circumstances as now presented there was a duty imposed upon the defendant's engineer to give a signal or some adequate warning, before starting the engine; and that on the ordinary issues in actions of this character, and under various decisions of this Court applicable to the case, if these facts and circumstances are accepted by the jury, (45) the verdict as to defendant's negligence should be resolved against the company. Farris v. R. R., 151 N.C. 483; Ray v. R. R.,141 N.C. 84; Smith v. R. R., 132 N.C. 819; essentially qualifying, if it does not expressly overrule, this same case as it appears in130 N.C. 344.
And the Court is further of opinion that on the facts in evidence, if established, the ordinary inferences permissible where one goes on a railroad track do not obtain here, and that it was not a negligent act on part of plaintiff in going forward on the track, nor in taking the position described in the testimony. So far as these facts now disclose, the only engine whose approach was to be apprehended, and the one which caused the injury, was then at rest, and the entire crew, including the engineer himself, had gone forward to observe the men engaged in repairing *Page 43 
the trestle and note the progress of the work; and the only conduct, if any, which could be imputed to plaintiff for negligence on this evidence was not getting up from his position when he saw the engineer leave the trestle and return to his engine. Whether under all the facts and circumstances, as they may be received by the jury, this was negligence on part of plaintiff and the proximate cause of the injury, may be submitted on the second issue as to contributory negligence, and determined on principles controlling that question. Ramsbottom v. R. R., 138 N.C. 38.
If such contributory negligence is established by the verdict, the case will then present the question whether defendant negligently failed to avail itself of the last clear chance of avoiding the injury, under the doctrine as recognized and applied in Sawyer v. R. R., 145 N.C. 24-27. In that case, on pages 27-28, speaking to the question here presented, the Court said:
"These logging roads, in various instances and in different decisions, have been described and treated as railroads and held to the same measure of responsibility and the same standard of duty. Hemphill v. LumberCo., 141 N.C. 487; Simpson v. Lumber Co., 133 N.C. 96; Craft v.Lumber Co., 132 N.C. 156. And it is well established that the employees of a railroad company engaged in operating its trains are required to keep a careful and continuous outlook along the track, and the company is responsible for injuries resulting as the proximate consequence of their negligence in the performance of this duty. Bullockv. R. R., 105 N.C. 180; Dean v. R. R., 107 N.C. 686; Pickett v.R. R., 117 N.C. 616. This particular duty arises not so much from the fact that railroad companies are common carriers or quasi- public corporations, as from the high degree of care imposed upon them on account of the dangerous agencies and implements employed and the great probability that serious and in many instances fatal (46) injuries are almost certain to result in case of collision."
And numerous other decisions with us uphold the same principle. Ordinarily, cases calling for application of the doctrine indicated arise when the injured person was down on the track, apparently unconscious or helpless, as in Sawyer v. R. R., just referred to, or in Pickett v. R. R.,117 N.C. 616, or in Dean v. R. R., 107 N.C. 687; but such extreme conditions are not at all essential, and the ruling should prevail whenever an engineer operating a railroad train does or, in proper performance of his duty, should observe that a collision is not improbable, and that a person is in such a position of peril that ordinary effort on his part will not likely avail to save him, from injury; and the authorities are also to the effect that an engineer in such circumstance should resolve doubts in favor of the safer course. *Page 44 
This was held in Clark v. R. R., 109 N.C. 430, 443, 444; Bullock v. R.R., 105 N.C. 180, and others of like import.
In Bullock v. R. R., Avery, J., for the Court, said: "It is the duty of an engineer, when running his engine, to keep a constant `lookout for obstructions, and when an obstruction is discerned, no matter when or where, he should promptly resort to all means within his power, known to skillful engine-drivers, to avert the threatened injury or danger.' Woods' R. L., sec. 418, p. 1548; R. R. v. Williams, 65 Ala. 74; R. R. v. Jones,66 Ala. 507. If the engineer, so soon as he discovered that the wagon was detained upon the track and could not, for the time, get out of the way, or so soon as with proper care and watchfulness he would have had reason to think such was its condition, had used every means and appliance in his power to stop the train, the defendant would not have been liable. But the judge omitted to tell the jury that it was negligence on the part of defendant, if the engineer could have seen, by watchfulness, though he did not in fact see, that the road was obstructed in time to stop his train before reaching the crossing. Carlton v. R. R., 104 N.C. 365; Wilson v. R.R., 90 N.C. 69; Snowden v. R. R., 95 N.C. 93. The defendant could not complain of this error. It is true that, ordinarily, an engineer has a right to assume that one who has time will get out of the way, but he is not warranted in acting upon this assumption after he `has reason to believe that he is laboring under some disability, or that he does not hear or comprehend the signals.'"
And in Clark v. R. R., supra, the Court said: "It is settled law in this State that where an engineer sees that a human being is on the track at a point where he can step off at his pleasure and without delay, he can assume that he is in full possession of his senses and faculties (47) without information to the contrary, and will step aside before the engine can overtake him. But where it is apparent to an engineer, who is keeping a proper outlook, that a man is lying prone upon the track, or his team is delayed in moving a wagon over a crossing it has been declared that the engineer, having reason to believe that life or property will be imperiled by going on without diminishing his speed, is negligent if he fails to use all the means at his command, consistent with the safety of the passengers and property in his charge, to stop his train and avoid coming in contact with the person so exposed." Citing Deans v. R. R., 107 N.C. 686; Bullock v. R. R., 105 N.C. 180.
As the case goes back for a new trial, we do not consider it advisable to discuss the testimony or its application more fully; but, under the authorities cited, we hold that there was error in dismissing the action, and that plaintiff is entitled to have his case passed upon by the jury. The order of nonsuit, therefore, will be set aside, and the question of defendant's responsibility considered on the two issues as to negligence *Page 45 
on part of plaintiff; and in case a verdict on these issues require it, a further issue should be submitted, involving the question whether there was a negligent failure on part of defendant to avail itself of the last clear chance of avoiding the injury, and if so, was such failure the proximate cause of plaintiff's injury.
There is nothing in this case that in any way conflicts with the decisions of this Court in Strickland v. R. R., 150 N.C. 4. In that case the intestate killed by a train had entered and was walking on the track of a railroad in the night-time, and about the schedule time of a fast passenger train, at or about the beginning of a trestle. It was held that the intestate was clearly guilty of contributory negligence, and that under the facts and attendant circumstances there was nothing to indicate to the engineer that the intestate was in a position of peril, or that called for the application of the doctrine of the last clear chance.
For the error indicated, the order of nonsuit is set aside and a new trial awarded.
Error.
Cited: Edge v. R. R., 153 N.C. 214; Twiddy v. Lumber Co., 154 N.C. 240;Hines v. R. R., 156 N.C. 226; Holman v. R. R., 159 N.C. 46; Shepherd v. R.R., 163 N.C. 521; Talley v. R. R., ib., 571, 579; Hanford v. R. R.,167 N.C. 279; Hall v. Electric Co., ib., 286; McNeill v. R. R., ib., 400;Buchanan v. Lumber Co., 168 N.C. 44; Hill v. R. R., 169 N.C. 741; Hall v.R. R. 172 N.C. 348.
(48)