There was allegation with testimony on part of plaintiff tending to show that on or about 28 September, 1908, plaintiff was in employ of defendant company on its yards at South Rocky Mount, N.C. as "handy man or messenger," and in the line of his duty was sent by his foreman or boss, with urgent directions to hurry, to the storeroom or roundhouse of defendant with a requisition for a keg of nuts or bolts. The path to the roundhouse led over the tracks of defendant company and on one of these tracks and across the path was a line of box cars, 18 in number, coupled together, five of them being towards a switching engine, detached and some ten feet ahead. That as plaintiff approached, this engine was standing still with a little smoke showing, with a man in the cab, looking towards plaintiff. That plaintiff, as he came to the train of cars, attempted to pass under the drawheads of the cars across the path, and while he was in this position "of peril," the switching engine, without signal or warning of any kind, backed against the cars, shoving them along about half a car length and causing serious injury to plaintiff. So far as appears there was nothing to obstruct the view, and, speaking more directly to the question presented, the plaintiff testified: "There was a line of box cars, about 18, across the path leading to the roundhouse, and I looked towards the (214) engine to see if I saw any one. The engine was not connected with the cars, but about 10 feet ahead of them standing still, etc. I was walking along whistling — saw a man sitting in the window of *Page 175 
the engine, he had his head right towards me, and afterwards I got between the cars going on towards the other side when the engine struck the cars and knocked me," etc. And again, "Don't know the engineer. He was looking towards me with his cap pulled down in front of his face; I did not hear any signal at all," etc. "When the cars struck I was crawling under the drawheads between the cars."
On this testimony, or on facts of similar import, we have held inBeck v. R. R., 149 N.C. 168, that it was a negligent act on the part of plaintiff in endeavoring to pass between these cars standing as they were on a live track and with an engine sufficiently near as to make its approach probable and such conduct would bar a recovery unless after the peril was developed there was a negligent failure on the part of defendant company to avail itself of the last clear chance to avoid the injury. In such case the prior negligence of plaintiff would not be contributory because it would not be the proximate or concurrent cause of the injury. Speaking to this question in Sawyer v. R. R., 145 N.C. 29, the Court said: "A negligent act of the plaintiff does not become contributory unless the proximate cause of the injury; and, although the plaintiff, in going on the track, may have been negligent, when he was struck down and rendered unconscious by a bolt of lightning his conduct as to what transpired after that time was no longer a factor in the occurrence, and, as all the negligence imputed to defendant on the first issue arose after plaintiff was down and helpless, the responsibility of defendant attached because it negligently failed to avail itself of the last clear chance to avoid the injury; so its negligence became the sole proximate cause of the injury; and the act of the plaintiff in going on the track, even though negligent in the first instance, became only the remote and not the proximate or concurrent cause." And on this doctrine of the last clear chance, in the recent case ofSnipes v. Manufacturing Co., 152 N.C. 42 and 46, this Court said: "Ordinarily, cases calling for application of the doctrine indicated arise when the injured person was down on the track, (215) apparently unconscious or helpless, as in Sawyer v. R. R., just referred to, or in Pickett v. R. R., 117 N.C. 616, or in Dean v.R. R., 107 N.C. 687; but such extreme conditions are not at all essential, and the ruling should prevail whenever an engineer operating a railroad train does or, in proper performance of his duty, should observe that a collision is not improbable, and that a person is in such a position of peril, that ordinary effort on his part will not likely avail to save him from injury; and the authorities are also to the effect that an engineer in such circumstances should resolve doubts in favor of the safer course."
This doctrine, here termed and referred to as the last clear chance, meaning responsibility arising by reason of a negligent failure of a *Page 176 
defendant to avail himself of the last clear chance of avoiding the injury, is very firmly implanted in our law and the duty and the breach of it, upon which it is properly made to rest, has been illustrated and applied in many recent decisions of the Court, as in Farris v. R. R., 151 N.C. 483, 491;Lassiter v. R. R., 133 N.C. 244, 247; Arrowood v. R. R., 126 N.C. 629, 362; Powell v. R. R., 125 N.C. 374; Purnell v. R. R., 122 N.C. 832;Stanley v. R. R., 120 N.C. 514; Lloyd v. R. R., 118 N.C. 1010; Dean v.R. R., 107 N.C. 687; Bullock v. R. R., 105 N.C. 180, 198.
Thus in the well considered case of Farris v. R. R., where a railroad company had negligently killed an employee who was walking along the track about the place of a yard crossing, and who had grabbed for his hat, which had suddenly blown from his head on or towards the track and causing the employee to grab for the hat and thus expose himself to danger, Manning, J., delivering the opinion, and, in reference to the question we are discussing, said: "The defendants objected to his Honor's submitting the third issue — that issue presenting the `last clear chance.'" While this issue has become immaterial, in view of the finding of the jury on the first and second issues, we think it was proper for his Honor to have submitted it. If the jury had found with defendants on the second issue, having found the first issue with plaintiff, the ultimate liability of defendants would have been determined by (216) their finding on the third issue. In the presence of the concurring negligence of a plaintiff and a defendant, it is a generally accepted doctrine, and well settled in this State, that the ultimate liability must depend upon whether the defendant could at the time have avoided the injury by the exercise of reasonable care, under the attendant circumstances. Rayv. R. R., 141 N.C. 84; Read v. R. R., 140 N.C. 146; Lassiter v. R. R.,133 N.C. 244; Arrowood v. R. R., 126 N.C. 629; Pickett v. R. R.,117 N.C. 616." In Lassiter v. R. R., supra, a railroad conductor of a freight train, in the performance of his duty on a railroad yard had negligently stepped up on a side track where some shifting was going on, and was run over by a shifting engine pushing some cars backwards on the side track referred to, and it appeared that the engineer on the cab could not have seen the conductor, and there was no one in position to keep a lookout, and there was no evidence that the bell was not ringing or the whistle sounding, and it was held to be an issue on the last clear chance; and Montgomery, J., in the opinion, said: "It is the duty of railroad companies to keep a reasonable lookout on moving trains. When Thomason saw the intestate step up on the side track the end of the box car attached to the shifting engine was twenty steps from him and the cars were moving at the rate of four miles an hour. The same witness said that the intestate had time *Page 177 
to have gotten off if he had heard the witness when he hallooed to him. That evidence was competent and fit to have been submitted to the jury upon the question of the last clear chance of the defendant — that is, whether if both the plaintiff and the defendant had been negligent the defendant could have prevented the death of the intestate by the use of means at hand or that reasonably ought to have been at hand." InPickett v. R. R., 117 N.C. 616; 53 Am. St., 611; 30 L.R.A., 257, the Court said: "If it is a settled law of North Carolina (as we have shown) that it is the duty of an engineer on a moving train to maintain a reasonable vigilant outlook along the track in his front, then the failure to do so is the omission of a legal duty. If, by the performance of that duty, an accident might have been averted, notwithstanding the previous negligence of another, then, under the doctrine of Davies v. Mann and Gunter v. Wicker, the breach of duty was (217) the proximate cause of any injury growing out of such accident, and when it is a proximate cause the company is liable to respond in damages. Having adopted the principle that the one whose duty it is to see does see, we must follow it to its logical results." In Arrowood v. R. R.,126 N.C. 629, the Court said: "The duty of keeping a lookout is on the defendant. If it can keep a proper lookout by means of the engineer alone, well and good. If for any reason a proper lookout can not be kept without the aid of the fireman, he also should be used. If by reason of their duties either the fireman or the engineer, or both, are so hindered that a proper lookout can not be kept, then it is the duty of the defendant at such places on its road to have a third man employed for that indispensable duty." The same doctrine was announced in Jeffries v. R. R., 129 N.C. 236;Bradley v. R. R., 126 N.C. 741, and Pharr v. R. R., 119 N.C. 756.
In Powell v. R. R., the present Chief Justice said: "There was also evidence tending to show that the engineer with a proper lookout might have seen the deceased. The fact that the engineer, sitting on the righthand side of the cab on a moonlight night, did not know till two days thereafter that his engine had knocked a man off on the side of the track (as the verdict finds), is itself some evidence to be considered upon the question whether there was a negligent lookout, especially taken in connection with the plaintiff's evidence that the train was running from twenty-five to thirty-five miles an hour at night, and sounding no whistle at public crossings."
In Sawyer v. R. R., supra, the Court spoke of the duty and the reason for it as follows: "And it is well established that the employees of a railroad company engaged in operating its trains are required to keep a careful and continuous outlook along the track, and the company is *Page 178 
responsible for injuries resulting as the proximate consequence of their negligence in the performance of this duty. Bullock v. R. R., 105 N.C. 180;Dean v. R. R., 107 N.C. 686; Pickett v. R. R., 117 N.C. 617. This particular duty arises not so much from the fact that railroad (218) companies are common carriers or quasi public corporations, as from the high degree of care imposed upon them on account of the dangerous agencies and implements employed and the great probability that serious, and in many instances fatal, injuries are almost certain to result in case of collision. As said by Burwell, J., in Haynes v. Gas Co., `The utmost degree of care, so far as skill and human foresight can go, is required, for the reason that a neglect of duty is likely to result in great bodily harm and sometimes in death to those who are compelled to use that means of conveyance.' And quoting from Ray on Negligence, page 53, "As a result of the least negligence may be of so fatal a nature, the duty of vigilance on the part of the carrier requires the exercise of that amount of care and skill in order to prevent accidents."
It will be noted from these citations, and many others could be made, that the doctrine we are discussing is called for, notwithstanding the previous negligent conduct of the person injured, and its application is frequently permissible, not only when the perilous position of such person is observed, but when it should or might have been observed by the exercise of proper care. Considering, then, the duty imposed by the law upon defendant's engineers to keep a careful outlook along the track, and to observe and note conditions which threaten a collision, and mindful of the principles embodied in the doctrine of the last clear chance, we are of opinion that there was error committed in directing a nonsuit in this case. According to plaintiff's testimony, and as the case is now presented, under repeated decisions of the Court, we are to accept this as true and construe it in the light most favorable to him, the engine was, at most, not over 150 or 160 feet from the crossing; there was a clear and unobstructed view along the track and plaintiff's approach to it. The plaintiff himself testified that the man in the cab, afterwards spoken of as the engineer, was looking right at him as he went up to the train, for it is no fair, certainly no necessary, interpretation of the testimony of this witness, "That the engineer was looking towards me with his cap pulled down in front of his face," that the witness intended to (219) convey the impression that the line of vision was shut off. The witness' first statement was that he "saw a man sitting in the cab with his head right towards me," and a perusal of the entire statement of the witness permits the construction that the engineer saw or could have seen him as he went up to the train. And in view of all the facts and attendant circumstances, we think the plaintiff is entitled to have the *Page 179 
cause submitted to the jury on an issue as to the defendant's negligence and on the question whether there was a negligent breach of duty on the part of defendant's engineer in failing to observe and note the position of peril in which the plaintiff was placed or had placed himself and in moving his engine against the cars when plaintiff was in that position. Whether he knew of the dangerous position of plaintiff or in the exercise of the care and duty incumbent upon him, he should have known it, and was guilty of a negligent act, the proximate cause of the injury, in running his engine against the cars at the time when it was done. It is no sufficient answer to the view we take of this evidence, and the inferences permissible from it, to suggest that the engineer was not required to suppose that a man standing by the train was going to dive under the cars, or that this may have been done so suddenly that the engineer, with his hand on the throttle, could not have seen or realized plaintiff's position in time to have saved him. On the contrary, there is testimony on the part of plaintiff which tends to show that moving along the path in the performance of a duty which required him to go to another part of the yard, plaintiff approached the train in full view of defendant's engineer, and seeing that the engine was detached and having been urged to hurry, he endeavored to pass under the cars which were across the path and blocking his way, when defendant's engineer, without signal or warning, moved his engine against the cars, causing plaintiff's hurt. The inferences of fact to be drawn from this testimony are for the jury and they alone must determine them, unaffected by the comments of the court, but, considered in its legal aspect, the evidence referred to permits the construction that the engineer saw the plaintiff when he endeavored to pass under the cars and certainly when viewed in reference to the duty imposed by the law upon the engineer or his assistants to keep a constant and continuous outlook along the track in the direction in which they intend to move, it is a fair (220) inference that they would have seen plaintiff if they had been in the proper performance of their imposed duty. A duty nowhere more exigent than in one of these railroad yards, where the employees, in the performance of their duties, are required to move from point to point across numbers of tracks, and where the shifting of cars is constantly going on. The suggestion referred to as favoring defendant's position should not be allowed to prevail on this appeal, for if permissible at all on the evidence, it is the view which makes most strongly for the defense, whereas we have repeatedly held that on a motion to nonsuit, the "evidence must be construed in the view most favorable to the plaintiff, and every fact which it tends to prove and which is an essential ingredient of the cause of action, must be taken as established, as the jury, if the case had been submitted to them, might have found those facts from *Page 180 
the testimony." Walker, J., in Cotton v. R. R., 149 N.C. 227. A statement of doctrine affirmed in many decisions of this Court. Deppe v. R. R.,152 N.C. 79, 80; Freeman v. Brown, 151 N.C. 111; Biles v. R. R.,139 N.C. 528; Brittain v. Westhall, 135 N.C. 492; Hopkins v. R. R.,131 N.C. 464. There was error in directing a nonsuit, and this will be certified that the judgment may be set aside and the cause proceeded with in accordance with law.
Reversed.