## CHARLES EDGE v. ATLANTIC COAST LINE RAILWAY COMPANY.

(Filed 19 October, 1910.)

1. **Contributory Negligence—Proximate Cause—Last Clear Chance —Railroads.**

In an action for damages against a railroad for personal injuries, *held*, contributory negligence for an employee in going along a path crossing railroad tracks to go between and under cars standing on a live track and giving indications that they might at any time be moved from their placing.

2. **Contributory Negligence—Proximate Cause—Last Clear Chance —Railroads.**

In such case, however, the negligence of the plaintiff is not the proximate cause unless it continues to the time of the injury complained of, and it is the defendant's duty, notwithstanding plaintiff's previous negligent act, to observe that degree of care required by the doctrine of the last clear chance when through its agents it knew or should have perceived, by keeping a proper lookout, that plaintiff was in such a position of danger or peril that ordinary effort on his own part would not avail to save him.

3. **Same—Evidence—Nonsuit.**

Upon a motion to nonsuit upon the evidence, in an action to recover damages for personal injury against a railroad, the evidence of plaintiff should be taken as true and accepted in the light most favorable to him; and when it appears therefrom, upon the doctrine of the last clear chance, that notwithstanding the negligent act of plaintiff, defendant's engineer saw his danger, that "he was looking straight at me" and afterwards, that "he was looking toward me with his cap pulled down in front of his face," the latter testimony will not be taken to mean necessarily that the engineer's view was obstructed so that he could not see the plaintiff, and the cause should be submitted under the doctrine of the last clear chance and the principles applicable.

4. **Same.**

In his action against a railroad for damages for personal injury, it appeared that plaintiff was a "handy man" or messenger in defendant's railroad yard, and in the course of his employment was directed to bring some articles from another part of the yard in a hurry; in doing this it was necessary for him to cross defendant's tracks, and on one of them was a detached engine, and eighteen box cars, and the engineer was looking out of the cab window with a plain and unobstructed view, and plaintiff en-

deavored to go between the cars, under the bumpers, when the engine was backed upon the cars, producing the injury. There was evidence by plaintiff, that, at the time, the engineer was looking right at him, and, he then testified, "that he was looking towards him with his cap pulled down in front of his face." *Held*, sufficient to be submitted to the jury upon the issue of the last clear chance, and that a motion as of nonsuit upon the evidence should not be granted.

APPEAL from *Guion, J.*, at the April Term, 1910, of EDGECOMBE.

Civil action to recover damages for physical injury caused by alleged negligence on part of defendant company.

On motion at the close of plaintiff's testimony, there was judgment of nonsuit, and plaintiff excepted and appealed.

*T. T. Thorne, G. M. T. Fountain & Son* for plaintiff.
*F. S. Spruill, J. L. Bridgers* for defendant.

HOKE, J. There was allegation with testimony on part of plaintiff tending to show that on or about 28 September, 1908, plaintiff was in employ of defendant company on its yards at South Rocky Mount, N. C., as "handy man or messenger," and in the line of his duty was sent by his foreman or boss, with urgent directions to hurry, to the storeroom or roundhouse of defendant with a requisition for a keg of nuts or bolts. The path to the roundhouse led over the tracks of defendant company and on one of these tracks and across the path was a line of box cars, 18 in number, coupled together, five of them being towards a switching engine, detached and some ten feet ahead. That as plaintiff approached, this engine was standing still with a little smoke showing, with a man in the cab, looking towards plaintiff. That plaintiff, as he came to the train of cars, attempted to pass under the drawheads of the cars across the path, and while he was in this position "of peril," the switching engine, without signal or warning of any kind, backed against the cars, shoving them along about half a car length and causing serious injury to plaintiff. So far as appears there was nothing to obstruct the view, and, speaking more directly to the question presented, the plaintiff testified: "There was a line of box cars,

about 18, across the path leading to the roundhouse, and I looked towards the engine to see if I saw any one. The engine was not connected with the cars, but about 10 feet ahead of them standing still, etc. I was walking along whistling—saw a man sitting in the window of the engine, he had his head right towards me, and afterwards I got between the cars going on towards the other side when the engine struck the cars and knocked me," etc. And again, "Don't know the engineer. He was looking towards me with his cap pulled down in front of his face; I did not hear any signal at all," etc. "When the cars struck I was crawling under the drawheads between the cars."

On this testimony, or on facts of similar import, we have held in the case of *Beck v. R. R.,* 149 N. C., p. 168, "That it was a negligent act on the part of plaintiff in endeavoring to pass between these cars standing as they were on a live track and with an engine sufficiently near as to make its approach probable and such conduct would bar a recovery unless after the peril was developed there was a negligent failure on the part of defendant company to avail itself of the last clear chance to avoid the injury. In such case the prior negligence of plaintiff would not be contributory because it would not be the proximate or concurrent cause of the injury. Speaking to this question in *Sawyer's case,* 145 N. C., p. 29, the Court said: "A negligent act of the plaintiff does not become contributory unless the proximate cause of the injury; and, although the plaintiff, in going on the track, may have been negligent, when he was struck down and rendered unconscious by a bolt of lightning his conduct as to what transpired after that time was no longer a factor in the occurrence, and, as all the negligence imputed to defendant on the first issue arose after plaintiff was down and helpless, the responsibility of defendant attached because it negligently failed to avail itself of the last clear chance to avoid the injury; so its negligence became the sole proximate cause of the injury; and the act of the plaintiff in going on the track, even though negligent in the first instance, became only the remote and not the proximate or concurrent cause." And on this doctrine of the last clear chance, in the recent case of *Snipes v. Manufacturing Co.,* 152 N. C., pp. 42 and 46, this Court said: "Ordinarily,

cases calling for application of the doctrine indicated arise when the injured person was down on the track, apparently unconscious or helpless, as in *Sawyer's case,* just referred to, or in *Pickett's case,* 117 N. C., 616, or in *Dean's case,* 107 N. C., 687; but such extreme conditions are not at all essential, and the ruling should prevail whenever an engineer operating a railroad train does or, in proper performance of his duty, should observe that a collision is not improbable, and that a person is in such a position of peril, that ordinary effort on his part will not likely avail to save him from injury; and the authorities are also to the effect that an engineer in such circumstances should resolve doubts in favor of the safer course."

This doctrine, here termed and referred to as the last clear chance, meaning responsibility arising by reason of a negligent failure of a defendant to avail himself of the last clear chance of avoiding the injury, is very firmly implanted in our law and the duty and the breach of it, upon which it is properly made to rest, has been illustrated and applied in many recent decisions of the Court, as in *Farris' case,* 151 N. C., pp. 483, 491; *Lassiter's case,* 133 N. C., pp. 244, 247; *Arrowood's case,* 126 N. C., pp. 629, 362; *Powell's case,* 125 N. C., p. 374; *Purnell's case,* 122 N. C., p. 832; *Stanley's case,* 120 N. C., p. 514; *Lloyd's case,* 118 N. C., p. 1010; *Deans' case,* 107 N. C., 687; *Bullock's case,* 105 N. C., pp. 180, 198.

Thus in the well considered case of *Farris, Administrator, v. the R. R.,* where a railroad company had negligently killed an employee who was walking along the track about the place of a yard crossing, and who had grabbed for his hat, which had suddenly blown from his head on or towards the track and causing the employee to grab for the hat and thus expose himself to danger, *Associate Justice Manning* delivering the opinion, and, in reference to the question we are discussing, said: "The defendants objected to his Honor's submitting the third issue—that issue presenting the "last clear chance." While this issue has become immaterial, in view of the finding of the jury on the first and second issues, we think it was proper for his Honor to have submitted it. If the jury had found with defendants on the second issue, having found the first issue with plaintiff, the

ultimate liability of defendants would have been determined by
their finding on the third issue.   In the presence of the concur-
ring negligence of a plaintiff and a defendant, it is a generally
accepted doctrine, and well settled in this State, that the ulti-
mate liability must depend upon whether the defendant could
at the time have avoided the injury by the exercise of reason-
able care, under the attendant circumstances.   *Ray v. R. R.,* 141
N. C., 84; *Read v. R. R.,* 140 N. C., 146; *Lassiter v. R. R.,* 133
N. C., 244; *Arrowood v. R. R.,* 126 N. C., 629 ; *Pickett v. R. R.,*
117 N. C., 616." In *Lassiter's case, supra,* a railroad conductor
of a freight train, in the performance of his duty on a railroad
yard had negligently stepped up on a side track where some
shifting was going on, and was run over by a shifting engine
pushing some cars backwards on the side track referred to, and
it appeared that the engineer on the cab could not have seen
the conductor, and there was no one in position to keep a look-
out, and there was no evidence that the bell was not ringing or
the whistle not sounding, and it was held to be an issue on the
last clear chance; and *Associate Justice Montgomery,* in the
opinion, said: "It is the duty of railroad companies to keep a
reasonable lookout on moving trains.   When Thomason saw the
intestate step up on the side track the end of the box car at-
tached to the shifting engine was twenty steps from him and the
cars were moving at the rate of four miles an hour.   The same
witness said that the intestate had time to have gotten off if he
had heard the witness when he hallooed to him.   That evidence
was competent and fit to have been submitted to the jury upon
the question of the last clear chance of the defendant—that is,
whether if both the plaintiff and the defendant had been negli-
gent the defendant could have prevented the death of the intes-
tate by the use of means at hand or that reasonably ought to
have been at hand." In *Pickett v. R. R.,* 117 N. C., 616; 53
Am. St. Rep.; 611; 30 L. R. A., 257, the Court said: "If it is a
settled law of North Carolina (as we have shown) that it is the
duty of an engineer on a moving train to maintain a reasonable
vigilant outlook along the track in his front, then the failure to
do so is the omission of a legal duty.   If, by the performance
of that duty, an accident might have been averted, notwithstand-

ing the previous negligence of another, then, under the doctrine of *Davies v. Mann* and *Gunter v. Wicker,* the breach of duty was the proximate cause of any injury growing out of such accident, and when it is a proximate cause the company is liable to respond in damages. Having adopted the principle that the one whose duty it is to see does see, we must follow it to its logical results." In *Arrowood v. R. R.,* 126 N. C., 629, the Court said: "The duty of keeping a lookout is on the defendant. If it can keep a proper lookout by means of the engineer alone, well and good. If for any reason a proper lookout cannot be kept without the aid of a fireman, he also should be used. If by reason a proper lookout cannot be kept without the aid of a fireman, he ought also to be used. If by reason of their duties either the fireman or the engineer, or both, are so hindered that a proper lookout cannot be kept, then it is the duty of the defendant at such places on its road to have a third man employed for that indispensable duty." The same doctrine was announced in *Jeffries v. R. R.,* 129 N. C., 236; *Bradley v. R. R.,* 126 N. C., 741, and *Pharr v. R. R.,* 119 N. C., 756.

In *Powell's case,* the present Chief Justice said: "There was also evidence tending to show that the engineer with a proper lookout might have seen the deceased. The fact that the engineer, sitting on the righthand side of the cab on a moonlight night, did not know till two days thereafter that his engine had knocked a man off on the side of the track (as the verdict finds), is itself some evidence to be considered upon the question whether there was a negligent lookout, especially taken in connection with the plaintiff's evidence that the train was running from twenty-five to thirty-five miles an hour at night, and sounding no whistle at public crossings."

In *Sawyer's case, supra,* the Court spoke of the duty and the reason for it as follows: "And it is well established that the employees of a railroad company engaged in operating its trains are required to keep a careful and continuous outlook along the track, and the company is responsible for injuries resulting as the proximate consequence of their negligence in the performance of this duty. *Bullock's case,* 105 N. C., 180; *Dean's case,* 107 N. C., 686; *Pickett's case,* 117 N. C., 617. This particular

EDGE *v.* RAILWAY COMPANY.

duty arises not so much from the fact that railroad companies
are common carriers or *quasi* public corporations, as from the
high degree of care imposed upon them on account of the dan-
gerous agencies and implements employed and the great prob-
ability that serious, and in many instances fatal, injuries are
almost certain to result in case of collision.   As said by *Burwell,*
*Judge,* in *Haynes v. Gas Co.,* "The utmost degree of care, so far
as skill and human foresight can go, is required, for the reason
that a neglect of duty is likely to result in great bodily harm and
sometimes in death to those who are compelled to use that means
of conveyance."   And quoting from Ray on Negligence, page
53, "As a result of the least negligence may be of so fatal a na-
ture, the duty of vigilance on the part of the carrier requires the
exercise of that amount of care and skill in order to prevent
accidents."

It will be noted from these citations, and many others could
be made, that the doctrine we are discussing is called for, not-
withstanding the previous negligent conduct of the person in-
jured, and its application is frequently permissible, not only
when the perilous position of such person is observed, but when
it should or might have been observed by the exercise of proper
care.   Considering, then, the duty imposed by the law upon de-
fendant's engineers to keep a careful outlook along the track,
and to observe and note conditions which threaten a collision, and
mindful of the principles embodied in the doctrine of the last
clear chance, we are of opinion that there was error committed
in directing a nonsuit in this case.   According to plaintiff's tes-
timony, and as the case is now presented, under repeated deci-
sions of the Court, we are to accept this as true and construe it
in the light most favorable to him, the engine was, at most, not
over 150 or 160 feet from the crossing; there was a clear and
unobstructed view along the track and plaintiff's approach to it.
The plaintiff himself testified that the man in the cab, after-
wards spoken of as the engineer, was looking right at him as he
went up to the train, for it is no fair, certainly no necessary, in-
terpretation of the testimony of this witness, "That the engineer
was looking towards me with his cap pulled down in front of his
face;" that the witness intended to convey the impression that

the line of vision was shut off. The witness' first statement was
that he "saw a man sitting in the cab with his head right to-
wards me," and a perusal of the entire statement of the witness
permits the construction that the engineer saw or could have seen
him as he went up to the train. And in view of all the facts
and attendant circumstances, we think the plaintiff is entitled
to have the cause submitted to the jury on an issue as to the de-
fendant's negligence and on the question whether there was a
negligent breach of duty on the part of defendant's engineer in
failing to observe and note the position of peril in which the
plaintiff was placed or had placed himself and in moving his
engine against the cars when plaintiff was in that position.
Whether he knew of the dangerous position of plaintiff or in the
exercise of the care and duty incumbent upon him, he should
have known it, and was guilty of a negligent act, the proximate
cause of the injury, in running his engine against the cars at
the time when it was done. It is no sufficient answer to the view
we take of this evidence, and the inferences permissible from it,
to suggest that the engineer was not required to suppose that a
man standing by the train was going to dive under the cars, or
that this may have been done so suddenly that the engineer, with
his hand on the throttle, could not have seen or realized plain-
tiff's position in time to have saved him. On the contrary, there
is testimony on the part of plaintiff which tends to show that
moving along the path in the performance of a duty which re-
quired him to go to another part of the yard, plaintiff ap-
proached the train in full view of defendant's engineer, and see-
ing that the engine was detached and having been urged to
hurry, he endeavored to pass under the cars which were across
the path and blocking his way, when defendant's engineer, with-
out signal or warning, moved his engine against the cars, caus-
ing plaintiff's hurt. The inferences of fact to be drawn from
this testimony are for the jury and they alone must determine
them, unaffected by the comments of the court, but, considered
in its legal aspect, the evidence referred to permits the construc-
tion that the engineer saw the plaintiff when he endeavored to
pass under the cars and certainly when viewed in reference to
the duty imposed by the law upon the engineer or his assistants

to keep a constant and continuous outlook along the track in the direction in which they intend to move, it is a fair inference that they would have seen plaintiff if they had been in the proper performance of their imposed duty. A duty nowhere more exigent than in one of these railroad yards, where the employees, in the performance of their duties, are required to move from point to point across numbers of tracks, and where the shifting of cars is constantly going on. The suggestion referred to as favoring defendant's position should not be allowed to prevail on this appeal, for if permissible at all on the evidence, it is the view which makes most strongly for the defense, whereas we have repeatedly held that on a motion to nonsuit, the "evidence must be construed in the view most favorable to the plaintiff, and every fact which it tends to prove and which is an essential ingredient of the cause of action, must be taken as established, as the jury, if the case had been submitted to them, might have found those facts from the testimony." *Walker, Judge,* in *Cotton v. R. R.,* 149 N. C., p. 227. A statement of doctrine affirmed in many decisions of this Court. *Deppe v. R. R.,* 152 N. C., pp. 79, 80; *Freeman v. Brown,* 151 N. C., p. 111; *Biles v. R. R.,* 139 N. C., p. 528; *Brittain v. Westhall,* 135 N. C., p. 492; *Hopkins v. R. R.,* 131 N. C., p. 464. There was error in directing a nonsuit, and this will be certified that the judgment may be set aside and the cause proceeded with in accordance with law.

Reversed.

BROWN, J., dissenting. I think the learned judge in the Superior Court properly sustained the motion to nonsuit, and that in doing so he followed the decisions of this Court.

The evidence of the plaintiff shows him to be a grown man, entirely familiar with conditions necessarily prevailing on the defendant's switching yards. He was a "handy man" or messenger in the round house, and was directed by his boss to take a message to the storeroom for supplies. On his way plaintiff came to a track on which was standing a train of eighteen freight cars. At one end of the train was a switching engine under steam plainly engaged in switching and handling these cars.

When plaintiff reached this train on his way to the storeroom, instead of going around the end of the train about one hundred feet further, he attempted to pass between the coupled cars in order to reach the other side, and was hurt by the engine backing just at the moment he was crawling under the drawheads.

The principle has been laid down by almost every court in this country and by text-writers, and adhered to with undeviating uniformity, that one who attempts to cross the track between the cars of a train, which he either knows, or might by observation see, is likely to move at any moment, is guilty of such gross negligence, if not recklessness, that he cannot recover if injured. Beach Cont. Neg., 40, 258, and cases cited. *R. R. v. Kendrick*, 40 Mass., 374; *R. R. v. Henderson*, 43 Pa. St., 449; *R. R. v. Pinchin*, 112 Ind.

"It is a danger so immediate and so great that he must not incur it." *Ranch v. Lloyd*, 31 Pa. St., 358. In *R. R. v. Copeland*, 61 Ala., *Chief Justice Stone* characterizes such an attempt as "negligence bordering on recklessness." So does the Court of Appeals of Maryland. *Lewis v. R. R.*, 38 Md., 588.

This Court unanimously held in *Beck v. R. R.*, 149 N. C., 168, that "When it appears that plaintiff's intestate was injured by attempting to go between cars of defendant's train, on a live track in use, and that he could easily have walked around the train by going ninety feet and have avoided injury, the act constitutes such contributory negligence as bars recovery."

It must be admitted, as it is manifest from all the authorities, that the engineer owes no duty whatever to keep a lookout for persons near his train to see if they go in between the cars, and he is not chargeable with negligence for failing to do so. The engineer has a right to assume that a person approaching his train or standing alongside of it will not venture between the cars, an act which has been universally denounced as reckless. If, as plaintiff contends, he was seen by the engineer while he was walking along near the cars, whistling, then the engineer was not required to watch him, on the supposition that he might crawl between the cars on the bumpers. The engineer had the right to assume that, seeing the danger, he would not voluntarily rush into it. Upon exactly the same principle it is held

that an engineer of a train seeing a man walking ahead on the track, may reasonably expect that he will step off. *Beach v. R. R.,* 148 N. C., 153.

It being thus demonstrated that the engineer owed plaintiff no duty to watch his movements to see if he went between the cars, and had the right to assume that plaintiff would not attempt so foolhardy and reckless an act, there is only one theory left upon which the engineer or the company can be held liable, and that is that the engineer actually knew that plaintiff was between the cars and in a position of peril at the moment he backed his engine. It is not a question of whether by the exercise of reasonable care and watchfulness the engineer might have known it, for he was not required to keep a lookout for any such purpose.

In other words, it is contended that the engineer, knowing plaintiff's perilous position, actually caused the injury by backing the cars on him.

I regret sincerely that a majority of my brethren think that such an inference may be fairly and legitimately drawn from the plaintiff's testimony. Common humanity forbids that any such imputation should be cast upon the engineer unless the evidence fully warrants it, for if such be true, then not only is the company liable for the damage, but the engineer himself would be guilty of either murder or manslaughter had the plaintiff been killed. The evidence relied upon to support this theory is confined to plaintiff's own testimony, and is so meagre that I quote it *verbatim.* Plaintiff stated that, as he approached this train: "I saw the engine standing in front of the cars fixing, to shift them;" I saw a man sitting in the window of the engine, he had his head right toward me, and *afterwards* I got up between the cars going on towards the other side when the engine struck the cars and knocked me towards the left." Again, "I don't know the engineer. He was looking toward me with his cap pulled down in front of his face. I did not hear any signal at all; if anything blew or rung did not hear it. When cars struck I was crawling under the drawheads between the cars." This is all the evidence contained in the record relied upon to warrant a recovery.

It is not contended that it was the duty of the engineer to blow his whistle or ring his bell for the purpose of keeping persons from going between the cars. And it must be borne in mind that it is not a question as to whether the engineer might by close lookout have seen plaintiff as he started to "crawl under the drawheads between the cars," for he had a right to assume that no grown man in possession of his faculties would attempt so reckless an act, and he was therefore not required to keep any such lookout.

The question is, does the evidence quoted justly warrant the inference that the engineer knew plaintiff was between the cars, and knowing it, backed his engine against the train and injured him?

It is inconceivable to think that the engineer would have done such a thing, and no such inference is warranted from the mere fact that at one time he was looking "towards plaintiff with his cap pulled down in front of his face."

My brethren fail entirely to note that plaintiff does not state that the engineer was looking at him when he jumped in between the cars. Plaintiff says that he saw the engineer in the window of his engine with his head towards plaintiff, "and *afterwards* I got up between the cars going on towards the other side when the engine struck the cars." How long after he saw the engineer before he entered between the cars plaintiff does not say. The engineer may have been looking towards plaintiff one moment and turned his head the next. He was not required to continue to look towards plaintiff, or he may have looked towards him and yet never have noticed him. The engineer may have been looking towards plaintiff and he may have seen him approaching the train, but that is no evidence he saw him dive between the cars.

In fact our observation teaches us that an engineer in his seat in the cab cannot see a man half way down his train go between the cars. When he saw plaintiff approaching the train the engineer was not required to keep his eye on him. He had a right to suppose that plaintiff, or any other sane man, standing right by the train, would walk around it rather than crawl under it,

especially when, as plaintiff admits, he saw the engine fixing to shift the cars.

The act of diving between cars for the purpose of crossing over to the other side takes but a few seconds. It is such an instantaneous act that if the engineer had seen it at same time he opened his throttle, he could not have stopped quick enough to prevent injury.

From plaintiff's own testimony it is apparent that when he jumped between the cars the engineer was then about starting to back his engine. The two acts must have been almost simultaneous, else plaintiff, an active man, would have gotten through without hurt.

I think the inference which the majority of the Court thinks can possibly be drawn from this evidence is unwarranted and is unjust to the engineer. I am willing to hold engineers up to the full measure of their duty and to hold their employers responsible for their negligence, but I am not willing to place an imputation of gross negligence upon their good name upon such flimsy evidence as is presented in this record.

It may be said that this is not a suit against the engineer and that he has no interest in the result as the railroad company will have to foot the bill.

But the engineer has a direct personal interest in the result, for it seriously affects his professional standing. While this can have no effect upon the members of this Court, it should at least make us careful not to place a construction upon evidence so injurious to the engineer unless the evidence clearly warrants it.

MR. JUSTICE WALKER concurs in the dissent.