Strafford,  
Feb. 4, 1913.

GARLAND, *Adm'r*, v. BOSTON & MAINE RAILROAD.

The defendant in an action for negligence is not liable without proof that the act or omission of which he was guilty constituted a breach of duty owed by him to the person injured thereby.

CASE, for negligently killing the plaintiff's intestate, Frank W. Garland. Trial by jury. At the close of the plaintiff's evidence the defendant's motion for a nonsuit was granted, subject to exception. The facts are stated in the opinion. Transferred from the February term, 1912, of the superior court by *Plummer*, J.

*George E. Tebbetts* (of Massachusetts) and *Mathews & Stevens* (*Mr. Stevens* orally), for the plaintiff.

*Kivel & Hughes, Leslie P. Snow,* and *Robert Doe* (*Mr. Snow* orally), for the defendant. "An essential ingredient in any conception of negligence is that it involves the violation of a legal duty which one person owes another—the duty to take care, for the safety of the person or property of the other; and the converse proposition is that where there is no legal duty to exercise care, there can be no actionable negligence. Therefore, it is reasoned that a plaintiff who grounds his action upon the negligence of the defendant must show not only that the conduct of the defendant was negligent, but also that it was a violation of some duty which the defendant owed to him." 1 Thomp. Com. Neg., s. 3.

"Under these circumstances, the defendants owed no duty to the plaintiff; and there can be no negligence or breach of duty where there is no act or service which the party is bound to perform or fulfil." *Frost* v. *Railroad,* 64 N. H. 220, 221; *Hill* v. *Railroad,* 67 N. H. 449; *Casista* v. *Railroad,* 69 N. H. 649; *McGill* v. *Company,* 70 N. H. 125, 127; *Hughes* v. *Railroad,* 71 N. H. 279, 284.

A jury can find that a man rightfully approaching a railroad crossing exercised due care in relying upon the giving of the crossing whistle to warn him of a coming train (*Smith* v. *Railroad,* 70 N. H. 53, 83); but a woman trespassing upon a railroad's right of way cannot prove her due care by testifying that she relied upon the giving of such whistle for a near-by crossing to warn her of such train. The duty to give such whistle was not owed to her, whereas it was to the man. *Batchelder* v. *Railroad,* 72 N. H. 528.

When the court said in *Leavitt* v. *Shoe Co.,* 69 N. H. 597, that "the law did not impose upon [the defendants] the duty of keeping their elevator locked, or of having a competent man in charge of it to keep trespassers from using it for their own convenience," it considered the case settled. There was no suggestion of the necessity of going further and of showing that there existed no one for whose benefit such a duty was imposed, although the performance of that duty would have incidentally prevented Leavitt's injuries. It would be useless to count the cases that our court has decided in the same way, but it is safe to say that with the exception of *Carney* v. *Railway,* 72 N. H. 364, every suit by a trespasser for negligent injuries has been treated on that basis.

When the Hobbs case was before this court the second time, the Carney doctrine was distinctly questioned and the necessity to distinguish it from the Hobbs case, or of overruling it, was recognized; and the cases were distinguished upon the ground

that the Hobbs case (Lacombe having testified at the second trial that, before Tommy came upon the premises, he had left the dynamite where Tommy afterward found it) was the ordinary case of a dangerous condition of premises and not one of active intervention. *Hobbs* v. *Company*, 75 N. H. 73, 78. It will be remembered that at the first hearing this distinction would not have distinguished, as Tommy was then on the premises when the explosive was thrown down by Lacombe.

There were important questions in the Carney case, questions as to the motorman's knowledge and duty, the novel question as to liability for killing a person whose life you are trying to save, the necessity of maintaining fenders upon electric cars, and the measure of damages for the loss of a child's life; and when the decision introduces the question in which we are interested by saying "if the child might be regarded as a trespasser," and disposes of it by citing one North Carolina case to the effect that the motorman "might have discovered the child's presence on or dangerously near to the track while looking for persons whom the defendants, by providing the crossing, invited to use it," it is evident that the court did not consider that the question was very closely connected with the case under discussion. This, we believe, explains why so little consideration was given to the matter that it was possible, almost as a matter of *dictum* merely, for a statement of a principle so foreign to our law of negligence to receive the sanction (perhaps we should say escape the attention) of the court.

Immediately following the last quotation and the citation of *Pickett* v. *Railroad*, 117 N. C. 616, the Carney decision says "the discovery of the child's presence would be the material fact— not the manner or the cause of making the discovery," and *Davis* v. *Railroad*, 70 N. H. 519, is cited. We agree that a duty to protect would arise upon the discovery of the child by the motorman, no matter how accidentally or unintentionally such discovery came about, even though the child were the rankest kind of trespassing wrongdoer. But we do not appreciate what connection there is between that proposition and the doctrine that there may be a recovery when, through a failure to perform some duty to others, a person is not thus accidentally discovered. Most certainly, nothing of the latter nature was established in the Davis case, as Judge *Young* expressly states that it is common knowledge that trespassers frequent the Concord passenger station. Is it possible that Judge *Chase* had in mind some application of the

North Carolina case and the statement that precedes it entirely different from the doctrine commonly attributed to him, and not to be readily and fully understood from the meagre exposition given it?

We are strengthened in our feeling that there must be some merit in this suspicion of ours from the fact that within two years after the Carney decision was rendered Judge *Chase*, although he had occasion to quote from the Carney decision upon another point, accepts *Hill* v. *Railroad*, 67 N. H. 449, as settling that "it is only against the owner or custodian of animals rightfully on the adjoining land or in the highway that railroads are obliged to maintain fences or cattle guards," and then consumes four and a half pages in discussing whether or not under the complicated law and the facts involved in that case the animals were "rightfully or wrongfully in the highway from which they went upon the defendant's track." *Flint* v. *Railroad*, 73 N. H. 141. If Judge *Chase* really intended to establish in the Carney case the doctrine that we are discussing in this brief, it is inconceivable that he should not mention it in the Flint case, either for the purpose of overruling *Hill* v. *Railroad*, or of distinguishing it therefrom.

A few months later, in a *Davies* v. *Mann* case, Judge *Chase* made the following statement: "The negligence with which the plaintiff charges the defendants is the failure of their motorman seasonably to discover the perilous position of the horse, and stop the car. It cannot be doubted that the evidence was sufficient to sustain a finding of such negligence. It was the duty of the motorman to keep watch of the track ahead of his car to avoid collisions with objects that might be upon the track, whether rightfully or wrongfully. The law imposed this duty upon him for the safety of persons both upon the highway and upon the car. Indeed, his own safety depended upon its faithful performance." *Laronde* v. *Railroad*, 73 N. H. 247.

If by this statement he meant that, because of the dangerous character of their means of locomotion, the law imposes upon electric railroads a duty to the whole world to maintain at all times a lookout on their cars, the citation of the Pickett case in the Carney decision may be explained, as that is the law of North Carolina. If he merely meant that the circumstances rendered it the duty of the motorman to exercise care toward expected transgressors and not actively to bring force to bear upon them, the whole discussion in the case is in line with the Nashua Iron

& Steel Company case, the Mitchell case, and others to the same effect which he cited. The Carney case is cited along with the others; and it is safe to say that if its author had believed that by it the theories upon which the other cases were based had become judicial junk, he never would have written this opinion in the Laronde case. He would simply have said: "The accident happened in a highway. From the evidence it could be found that the motorman, had he properly performed his duty towards persons and things that might lawfully be occupying the track, would have seen the trespassing team in season to avoid injuring it. Exceptions overruled."

We confess that the first time we read *Pickett* v. *Railroad*, 117 N. C. 616, it appeared to us to state the proposition that a drunken trespasser might recover upon the strength of a breach of duty owed to passengers and others rightfully present. But after reading the decision three times at one sitting, it became plain that the paradox spoken of consisted in allowing a recovery by the trespassing child and cow while denying the drunken man the same rights, and in allowing a recovery by passengers for a failure to keep a lookout which the law, as an absolute rule, without reference to any particular classes of persons or things, required to be maintained, while denying the drunken man, who could be seen by such lookout, the same right. The fact that the court carefully placed this drunken man in full view upon the boulder, instead of hiding him behind it, suggests what it was really intended to decide. That the case was speaking of an absolute duty to look, and not of duties imposed in consequence of any particular relationship to the parties, is clear from the subsequent treatment of the case and subject. *Arrowood* v. *Railroad*, 126 N. C. 629; *Bradley* v. *Railway*, 126 N. C. 735; *Bagon* v. *Railroad*, 129 N. C. 154; *Jeffries* v. *Railroad*, 129 N. C. 236; *Lassiter* v. *Railroad*, 133 N. C. 244; *Sawyer* v. *Railroad*, 145 N. C. 24; *Snipes* v. *Company*, 152 N. C. 42; *Edge* v. *Railway*, 153 N. C. 212; *Cabe* v. *Railway*, 155 N. C. 411. Most assuredly, it cannot lend any aid to the extension of that doctrine to cover cases like the Garland case, for North Carolina denies a recovery in such cases. *Bailey* v. *Railroad*, 149 N. C. 169.

At the oral argument, the question was asked whether or not a recovery could be had for injuries suffered by an infant who is concealed from the trainmen's view by the person of its mother, when the mother, either seen or unseen, is negligently run into. However impossible any imagined set of circumstances may in

fact be, it cannot affect the principle that where there is no duty to the plaintiff there can be no recovery; and when the only duty that exists is that of keeping a lookout, it can make no difference to the injured party (or in law) what the obstacle is that renders such lookout ineffectual.   If the darkness of a stormy night should prevent the trainmen, while maintaining a reasonable lookout, from seeing the mother and child in season to avoid injuring them, there would be no recovery.   If in the daytime they should see a bale of hay on the track which they as reasonable men knew their train would readily push aside, it could hardly be suggested that the child hidden behind the hay was negligently killed, whatever claim the owner might have for his trespassing hay.   If because of a curve in the road through a cut the reasonable lookout fails to inform the trainmen of the infant's presence in time to avoid injury to it, no one would suggest that there could be a recovery; and the additional fact that just before entering the curve the train had been negligently run over the infant's mother would not be supposed to create a liability to the infant, although it also would have been saved by the stopping of the train to save the mother.   However closely in time or space, and however naturally and necessarily, the child on the curve is saved from harm by the exercise of care to its mother on the straight track before reaching the curve, such exercise of care to its mother can never be anything but the occasion—the accidental cause—of the child's safety.   Such a mere incidental sequence of events— such a mere coincidence—would have no resemblance to that cause and effect by which our negligence law regulates the conduct of man to men.   If the saving of the child by the exercise of due care to its mother would be purely accidental—an interposition of Fate, or, to use the nomenclature of negligence authors, an act of God—we will leave it for others to suggest how liability for killing the child can follow from the merely prior breach of a duty to the mother.

The result of the contrary doctrine, by which a recovery is being sought for Garland's death, is well illustrated by the question of the court at the oral argument as to the right of recovery by a tramp riding the trucks for injuries received in collisions.   If Garland recovers, then every such tramp case will have but one question involved—the assessment of damages; and whatever may be thought as to the ease with which that question can be answered, we are not ready to admit the wisdom and necessity

of such a violent upsetting of the New Hampshire theories of negligence liability.

If the Carney doctrine is law and Garland recovers, we believe it would be well for the court to point out what the law may be expected to be as to our liability to a fruit thief, who is injured by falling into an uncovered well while strolling across our field arm in arm with our cook, who is likewise injured and toward whom reasonable care demanded that we should either fence the well or maintain by it a lighted lantern. The doctrine that there is no duty to fruit thieves as to the condition of the premises would no longer be a distinction that distinguishes. We shall expect to be given a distinction that will distinguish our duty to the cook from the duty of the south-bound trainmen to the north-bound trainmen and passengers, and show why the one is incapable of rendering any assistance to trespassers while the other can gather all mankind under its kindly wing.

Thompson stated for us at the start the principle upon which the law of negligence is based. In closing we will permit him to state the conclusion we reach when that principle is applied to the facts of this case: "If, therefore, a trespasser or 'stowaway' is injured with other persons in a collision, derailment, or other common disaster, or in any manner other than by negligence which is special to him after his presence is discovered by the servants of the carrier, he has no remedy against the carrier, although the disaster may have resulted from the negligence of the carrier or his servants." 3 Thomp. Com. Neg., s. 3302.

PEASLEE, J. The plaintiff's decedent, Garland, was killed in a head-on collision between two trains owned and operated by the defendant. Garland was riding in the engine cab on the up train, and his presence was not known to the defendant's servants, other than the engine men on that train. There was no claim that these men were negligent, the charge being that the collision was caused by the fault of the men operating the down train, or of those ordering the movement of trains. It was admitted that Garland was a trespasser and that there was no reason to anticipate his presence in the cab. There is no serious dispute as to the sufficiency of the evidence, and the substantial question in the case is one of law.

May one recover for an injury inflicted upon him through the defendant's failure to use reasonable care toward a third person?

It is urged that such liability ought to exist because the rule imposes on the defendant no added burden of conduct, because he is admitted to be in the wrong, and when acting wrongfully he should be held responsible for all the consequences of such conduct.

The law governing actions for negligence has for its foundation the rule of reasonable conduct. However much this rule has been infringed upon in certain lines of decision as to the law of master and servant, it has been adhered to and applied as to other relations. The underlying reason for decisions that liability did not exist has not always been stated. The usual formula is that under these circumstances, or as to this plaintiff, the defendant owed no duty. But this dogmatic statement gives no answer to the arguments now advanced on behalf of the plaintiff.

The conclusion that there was no duty must be preceded by one that there was no unreasonable act or omission. Unless it has this foundation it has no place in the law of negligence. The general rule is more fully stated as due care under all the circumstances of the particular case. That is, the standard is a relative one. It is not a fixed measure for action or inaction, applicable independent of the surrounding facts of time, place, and the like. "Nothing would follow from the act except for the environment. All acts, apart from their surrounding circumstances, are indifferent to the law." Holmes Com. Law 54.

The rule of reasonable care necessarily includes two persons, or one person and some right or property of another. It has to do with one's acts in reference to the person, property, or rights of another. It is a rule of relation. If there be no relation there is nothing upon which the rule can operate. The rule of reasonable care under the circumstances could not limit the conduct of Robinson Crusoe as he was first situated; but as soon as he saw the tracks in the sand, the rule began to have vitality. He then had notice that there might be other persons on the island; and this knowledge of their presence made it his duty as a reasonable man to use reasonable care to the end that no act of his should injure them.

Unless and until one is brought into relation with other men, or property, or rights, he has no obligation to act with reference to them; and this is true whether the obligation be called legal, moral, or reasonable. "Most of the rights of property, as well as of person, in the social state, are not absolute, but relative." *Losee* v. *Buchanan*, 51 N. Y. 476, 485, *Brown* v. *Collins*, 53 N. H.

442, 448. The relation may be to a single person, as where two travelers meet unexpectedly in the desert. It may be to a class, or it may be to the public generally.

It has usually been held that facts which create a relation and therefore a duty as to one, do not establish the same obligation to all mankind. To be within the right created, the complaining party must show facts which make the reason for claiming a relation applicable to him. The proposed rule is an abandonment of this idea and seeks to make the obligation to use care, which springs from the relationship, a duty owed to everybody who by chance comes within the range of the influence of the act complained of. The argument is that since the act is one the defendant should have refrained from doing, it is just that he be responsible for all its consequences. But this is a partial view of the situation only. The act is not wrongful in itself. Its wrongfulness is found in its probable effect upon others who are in some relation to the actor. Remove these related parties from the situation and the act is entirely lawful. As to the unrelated parties the happening is a pure accident.

When it is said that one has been guilty of the negligence denounced by the law, a fault in personal morality is not necessarily implied. The standard by which he is judged is not internal, but external. An outward criterion for legal culpability has been set up. Moral considerations undoubtedly entered into the establishment of the legal standard, but they form no part of the test to be applied. "If the external phenomena, the manifest acts and omissions, are such as it requires, it is wholly indifferent to the internal phenomena of conscience." Holmes Com. Law 110; *Jewell* v. *Colby*, 66 N. H. 399. The defendant's liability being equally great whether he is or is not morally at fault, the argument that his liability should be enlarged because he has been guilty of a moral wrong has no application.

The ordinary act of negligence has in it no element of moral turpitude. There need be no purpose to commit a wrong as to any one, nor a conscious remissness in legal duty. When such a purpose or consciousness exists, there is an added reason for holding the wrongdoer responsible for all the consequences of his act. It is this idea which is at the foundation of the law in many jurisdictions, imposing liability in a case like this when the fault was wanton or willful, or what is sometimes called grossly negligent.

If, in the case of purely unintentional injuries, the relation is

not necessary to the existence of the duty—if the duty exists as to all men because a relation makes it reasonable to impose it as to one man—it follows that the law as to duty to trespassers has been wrongly stated. *Hobbs* v. *Company*, 75 N. H. 73. The same thing is true of the law as to statutory signals (*Batchelder* v. *Railroad*, 72 N. H. 528) and other safeguards. *Hill* v. *Railroad*, 67 N. H. 449; *Casista* v. *Railroad*, 69 N. H. 649; *Flint* v. *Railroad*, 73 N. H. 141. "It must appear, to render the defendants liable, that the action or omission to act, of which complaint is made, constituted a breach of duty owed the plaintiff by the defendants." *McGill* v. *Company*, 70 N. H. 125, 127; *Hughes* v. *Railroad*, 71 N. H. 279.

This heretofore recognized rule of law or of conduct was adopted, and has been maintained and approved, because of its inherent reasonableness. Undoubtedly, some reason can be advanced why the liability should be more extensive. But this is true of nearly all rules by which human conduct and responsibility are governed. A rule is not unreasonable because some men would not naturally act according to its admonition, nor is one shown to be reasonable because a small portion of the people believe it to be so.

The authorities in this country are substantially unanimous to the effect that, in actions for failure to use ordinary care, a duty toward the complaining party must be shown to exist. The reason for the imposition of the duty has been found in the relation of the parties. While the detailed process of reasoning by which the conclusion is reached is not frequently stated, an examination of the cases generally shows that this is the test which has been applied. If there is no relationship, there is no duty. But in this case reliance is placed upon *Carney* v. *Railway*, 72 N. H. 364, to show that the rule is otherwise. It is there said that fault as to a trespasser may be predicated upon a failure to keep a lookout for persons rightfully upon the track. The case cited and relied upon in that opinion (*Pickett* v. *Railroad*, 117 N. C. 616) depends upon the rule, peculiar to that jurisdiction (*Smith* v. *Railroad*, 114 N. C. 728), that as to everybody it is the duty of a railroad to keep a lookout ahead of its moving trains. This is an application (though in modified form and to one situation only) of the rule laid down in many ancient English authorities, that the actor is liable for all the consequences of his act. The rule had been largely abandoned in England, but was revived as to certain

so-called dangerous agencies by the decision in *Fletcher* v. *Rylands*, L. R. 1 Exch. 265,—L. R. 3 H. L. 330. The whole theory is contrary to the general trend of American authority and has been repudiated in this state because it "pays no heed to the essential elements of actual fault." *Brown* v. *Collins*, 53 N. H. 442, 448; *Moore* v. *Company*, 74 N. H. 305, 307.

That the rule in the Pickett case does not go beyond this is made evident in the later decisions in the same jurisdiction. In *Peterson* v. *Railroad*, 143 N. C. 260, the right of a mere licensee on a train to recover for failure to start the train with the care due to passengers thereon is denied, because the duty was not owed to the licensee. In the Pickett case, the fact there was a duty to look out for some people was urged as one reason why the duty should exist as to all. Because of this, of the great danger incident to the movement of trains, it was held that the duty to look is owed to all who chance to be in a position to be injured when there is a failure to look. This being settled, the rest follows as a matter of course. Pickett recovered, not because of a breach of the duty to look out for others, but because the duty was owed to his decedent. Peterson failed to recover because, although there was a breach of the duty owed to others, the duty did not extend to him, even when he was in a place to be injured exactly as one to whom the duty was owed might have been. See, also, *Arrowood* v. *Railroad*, 126 N. C. 629; *Jeffries* v. *Railroad*, 129 N. C. 236; *Sawyer* v. *Railroad*, 145 N. C. 24; *Snipes* v. *Company*, 152 N. C. 42; *Edge* v. *Railway*, 153 N. C. 212.

The reasoning in the Carney case is not along the line of the Pickett case, but is directly in favor of the plaintiff's contention in the case at bar. If all that was said in the Carney case were sound law, it would follow that this plaintiff was entitled to go to the jury. The opinion involves a general principle in the law of negligence. It adopts the theory that neglect of duty is sufficient cause for complaint, without considering who the complaining party is, or to whom the duty was primarily owed.

In *Hobbs* v. *Company*, 75 N. H. 73, 78, it is erroneously stated that the Carney case is not an authority when the complaint is merely as to the condition of premises. But the theory upon which the Carney case was decided is equally applicable in either class of cases. If in the one case it is enough to put the defendant in the wrong to show that his neglect of his duty to somebody had a part in causing injury to another, it must be equally so in

all cases. The fundamental idea being that since he has failed to act as the law requires of him he is responsible for all the results flowing from his act, it can make no difference in principle whether that failure consists in carelessly obstructing a way by a fallen tree or by a moving train.

It is apparent that the rule in the Carney case was a wide departure from the principles theretofore announced in this jurisdiction and generally recognized elsewhere. The point is treated but briefly in the opinion, and nothing is said of the conflict thereby engendered. The later cases have been disposed of as though the rule theretofore applied was the law. Acts are or are not negligent as to a person who is injured, according to whether he does or does not establish the relation between himself and the defendant because of which the duty arises or is imposed. *Chickering* v. *Thompson, ante,* 311; *Lydston* v. *Company,* 75 N. H. 23; *Brown* v. *Railroad,* 73 N. H. 568; *Flint* v. *Railroad,* 73 N. H. 141. So far as the Carney case is in conflict with this principle, it has in effect been overruled by these cases.

The case of *McDonald* v. *Snelling,* 14 Allen 290, which is also relied upon by the plaintiff, does not conflict with the view here expressed. It states the general rule as commonly applied. The defendant is responsible for all the consequences of his act to those whom he ought reasonably to have foreseen might be injured thereby. He is not liable to those whom reasonable men would not have anticipated might be injured.

The rule of reasonable conduct is constantly invoked to fix responsibility upon defendants. Non-liability should be settled by the same test. The plaintiff must be in a position to say to the defendant: "You did not act as you should have acted toward me; you knew, or ought to have known, it was likely that I would be in a position to be injuriously affected by your carelessness." No such situation appeared in this case. So far as the actors upon whom fault is here charged are concerned, Garland's presence was unknown and not to be anticipated. They were not required to foresee his chance or casual trespass upon the engine of the up train. *Shea* v. *Railroad,* 69 N. H. 361; *Myers* v. *Railroad,* 72 N. H. 175.

*Exception overruled.*

All concurred.