BROWN, J., dissenting; WALKER, J., concurring in the dissenting opinion.
This is an action for the wrongful killing of the plaintiff's intestate, under the United States Employers' Liability act, ch. 149, 35 Statutes at Large, 65, amended ch. 143, Statutes at Large.
Exceptions 1 and 2 are that issues as to the amount of damages by reason of the negligence of the defendant and of plaintiff's contributory negligence were not submitted to the jury as separate and distinct issues. But the statute does not require this. The court instructed the jury, in accordance with the statute, to assess the damages by reason of the death of the intestate, if they found it was due to negligence on the part of the defendant, and to assess the amount of diminution on account of the contributory negligence of the deceased, and the difference, if any, would be their verdict.
The death of the intestate occurred in Virginia, but it was admitted that the defendant was engaged in interstate commerce and that the intestate was employed by the defendant in such commerce at the time of his death. The judge read the Federal act on the subject and carefully explained it to the jury. He told them that it required that the damages "shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. This means that the damages shall be diminished in proportion to the amount of the employee's negligence, as compared with the combined negligence of himself and the defendant, . . . and that where the causal negligence, that is, the negligence causing the death, is partly attributable to the employee and partly to the carrier, the employee shall not recover full damages, but only a proportional amount, bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both, the purpose being to abrogate the common-law rule exonerating the carrier from liability in such cases, and to substitute a new rule confining the exoneration to a proportional part of the damages, corresponding to the amount of negligence attributable to the employee."
The court submitted only the two issues, "Whether the intestate of the plaintiff was killed by the negligence of the defendant, as alleged *Page 484 
(435) in the complaint," and "What damage, if any, is the plaintiff entitled to recover?" But with this instruction the whole matter in dispute was fairly submitted to the jury, and it was not error not to submit separate issues as to how much was assessed by the jury as the total damages and how much was deducted for the contributory negligence. Where the issues submitted fully cover the disputed points it is not error to refuse to submit other issues. Hendricks v. Ireland,162 N.C. 523, and cases there cited; R. R. v. Earnest, 229 U.S. 114.
Exception 3 is to the admissibility of the testimony of S.W. Jones, that the curve did not interfere with the view at the point 38 rails north of the place of the accident. The testimony was admissible, and the defendant's brief argues merely the weight to be given such testimony, which was a matter for the jury.
Exception 4 is abandoned, as it does not appear in the defendant's brief. Rule 34.
Exception 6 was to the refusal to permit the witness Hippert to testify whether, taking into consideration the curve of the track and the other natural objects there, he could have seen the body beside the track before he did see it. This would have been an expression of opinion which the jury should have drawn from the facts in evidence, and not the witness. It would be better to admit such evidence, but its admission or rejection can rarely be of sufficient importance to affect the result or justify a new trial.
Exceptions 5, 7, and 8 are to the refusal of the motion to nonsuit and to charge the jury to answer the first issue "No." There was sufficient evidence to go to the jury, and these exceptions need not be discussed. On such motion the evidence must be considered in the most favorable light to the plaintiff. Hodges v. Wilson, 165 N.C. 323; Walters v. Lumber Co.,ib., 388. This is familiar learning.
Exceptions 9, 10, 11, 12, 13, 14, and 15 are to the charge of the court, and rest upon the idea that the defendant owed the intestate no duty whatever until the peril of the deceased was discovered by the engineer. This would destroy the entire doctrine of "the last clear chance" in cases of negligence. This is not the intent of the employers' liability statute, which is in the interest of the party injured, by making contributory negligence when it exists concurrently with negligence on the part of the defendant, not a complete bar to recovery, as heretofore, but only a matter in abatement in proportion to the comparative negligence of the party injured. The common-law doctrine of negligence still applies, in the construction of the statute, as to the negligence of the defendant. It was the duty of the engineer and fireman to have kept a proper lookout on the track, and if they could not do so, it was the duty of the defendant *Page 485 
to have had still another person on the lookout to prevent (436) any avoidable accident. Arrowood v. R. R., 126 N.C. 629. If the defendant could by reasonable diligence have discovered the critical condition of the deceased in time to have averted the injury, it is liable, notwithstanding the negligence of the deceased. 3 Labatt M. and S. (2 Ed.), 3390, Note 5; R. R. v. Ives, 144 U.S. 408.
It is not necessary to discuss more fully the facts in the case, as they are fully presented in the careful charge of the court, with the correct application of the law. The distance at which the body of the deceased could have been seen was entirely a question for the jury upon the evidence, as well as the distance within which the train could have been stopped.
The deceased had put his red light in the middle of the track as a danger signal and had gone to sleep, lying beside the track with a white light by him. The engineer testified that he knew that this flagman should be there and that these lights were a danger signal; that he did not undertake to slacken his speed till he got within 300 feet or less, when he blew the signal, and the deceased waking and rising up, his head was struck by an iron step, which killed him; that if he had blown the signal sooner the sleeper would probably have gotten up in time to have avoided being struck. There was evidence tending to show that the engineer and fireman were not keeping a proper lookout on the track, if any, until they got within 50 yards of the sleeper. Dallago v. R. R., 165 N.C. 269.
The whole subject is fully discussed in a late case, Draper v. R. R.,161 N.C. 310, in which Allen, J., states the law as follows: "In an action for damages for the negligent killing of plaintiff's intestate, who was down and helpless on the track and was run over by the defendant's train, involving the question whether the engineer by the exercise of ordinary care could have stopped the train in time to have avoided the killing, the jury are not bound by the opinions of the witnesses, as to the distance within which the train could be stopped, but may consider the evidence as to the condition of the track, the grade, the length and weight of the train, the speed, and other relevant circumstances, and upon the whole evidence determine within what distance it could have been stopped."
It is not sufficient defense of the negligence of the defendant that the engineer could not have stopped the train in time to avoid the death of the plaintiff's intestate after he perceived him on the track. The question is whether the engineer could have stopped the train in time to have avoided killing the deceased after he could have perceived the danger of the deceased, had the engineer and fireman been in the exercise of *Page 486 
(437) proper diligence on the lookout. Ray v. R. R., 141 N.C. 87; Farris v. R. R., 151 N.C. 491; Edge v. R. R., 153 N.C. 216;R. R. v. Ives, 144 U.S. 408.
No error.