## J. C. SMITH v. COMMISSIONERS OF LEXINGTON.

(Filed 20 November, 1918.)

**1. Evidence—Principal and Agent—Employment.**

Where the defendant is sued for damages for its alleged negligence in installing an electric equipment in a building, etc., causing the death of the plaintiff's intestate, testimony of plaintiff's witness as to work done by him when not in the defendant's employment, and after the injury, is properly excluded.

**2. Courts—Expression of Opinion—Statutes—Electricity.**

Where an excessive voltage of electricity on the defendant's wire is in question on the trial for the negligent killing of plaintiff's intestate, and an expert witness has been asked the amount of the voltage that caused the death, a remark of the judge that the witness could state the voltage that would produce death is not objectionable as an expression of opinion prohibited by the statute.

**3. Appeal and Error—Objections and Exceptions—Courts—Expression of Opinion—Statutes.**

Objection that a remark made by the judge to the jury during the trial was an expression of his opinion, prohibited by the statute, should be taken at the time the remark was made.

**4. Evidence—Expert Opinion—Questions for Jury—Electricity.**

Where the plaintiff's intestate is alleged to have been negligently killed by a voltage of electricity coming through the defendant's wire, upon an equipment it had installed, the amount of voltage upon the wire at the time, taking into consideration the surroundings of the intestate, the condition of the room in which he was killed, etc., is for the determination of the jury, and the opinion of an expert witness thereon is properly excluded.

**5. Evidence—Opinion—Experts—Hypothetical Questions.**

The opinion of an expert must be upon a hypothetical state of facts, if found by the jury upon the evidence.

**6. Evidence—Expert Opinions—Questions for Jury.**

Where the plaintiff's intestate has been killed by a voltage of electricity which he received when taking hold of an electric socket that had been put in the building for his employer. by the defendant, as a part of an electrical equipment, for which the defendant furnished electricity, and the question has arisen on the trial, as to whether a porcelain or metal socket should have been used under the conditions the plaintiff claims to have existed at the time, the opinion as to the kind that should have been used is properly excluded as being upon a question for the sole determination of the jury.

**7. Evidence—New Matter—Court's Discretion—Appeal and Error.**

The admission of new matter on redirect examination is within the sound legal discretion of the trial judge, and not reviewable on appeal, in the absence of its abuse.

**8. Appeal and Error—Objections and Exceptions—Evidence.**

Exceptions to the admission of evidence that has already been substantially given by the witness will not be sustained on appeal.

**9. Appeal and Error—Evidence—Unanswered Questions.**

Error assigned to the exclusion of unanswered questions, without making it to appear what these answers would have been, will not be considered on appeal.

**10. Electricity—Negligence—Evidence—Approved Appliances—General Use.**

The defendant had installed an electrical equipment in the building of the employer of the plaintiff's intestate, who was killed by a current of electricity furnished by the defendant, while taking hold of an electric socket therein; and upon the question whether the socket furnished was a proper one, a charge to the jury upon the evidence, that the defendant was required to furnish sockets such as were "approved and in general use and reasonably adapted for the purpose to which they were put," is *Held* to be a proper one.

**11. Electricity — Negligence — Evidence — Questions for Jury—Appeal and Error.**

Where the defendant has installed an electrical equipment in the house of the employer of the plaintiff's intestate, which has been accepted by the employer, and the intestate was killed by catching hold of a socket, and there is evidence tending to show that the socket was a proper one and was safely used immediately preceding the injury, and the death could only have been caused by unusual or accidental occurrences: *Held*, the burden of proof was on the plaintiff to show the defendant's actionable negligence, and a verdict in favor of the defendant on the issue, under a proper charge, applying the rule of the "highest degree of care practicable," as to the installation and inspection of the defendant furnishing the current, will not be disturbed on appeal.

WALKER and HOKE, JJ., dissenting.

APPEAL by plaintiff from *Shaw, J.,* at July Term, 1918, of DAVIDSON. This was an action for the death of plaintiff's intestate by an electric

shock at the Chero-Cola plant at Lexington, N. C., on 25 June, 1917. Verdict and judgment for defendant. Appeal by plaintiff.

*J. C. Bower and J. R. McRary for plaintiff.*
*Raper & Raper and Walser & Walser for defendant.*

CLARK, C. J. The plaintiff's intestate was assisting in putting machinery in the Chero-Cola plant at Lexington for operation, it being a new plant, and at the time he was sitting on a large metal-covered machine waiting for a change to be made in a gas tube. In getting down from the machine he took hold of an electric socket, which had been put in by the defendant and which was hanging over his lap, to push it out of the way, and received the deadly current which instantly killed him. The electric power and light fixtures had been installed by the town of Lexington some ten days before. There had been practically no bottling done up to that time and the lights had been turned on for the first time less than an hour before the plaintiff's intestate was killed. There was a large machine—some 6 feet long, 6 feet high, and 4 feet wide—partially filled with water, known as the "soaker." The electric light was hung over the soaker, and there was no practicable way to get to the socket except by getting on the machine or of standing on the floor on tiptoe and reaching the socket by leaning against the soaker. There was evidence that the voltage was about 220, which could have been on the droplight and socket at the time of the death, even if there had been no cement or damp floor, which was shown in the evidence. There was evidence that the Chero-Cola Company asked defendant to put in a current of 110 volts, and it protested against any higher voltage. The plaintiff put on evidence that this protest was not because of danger anticipated, but because so heavy a voltage burned out the lights too rapidly.

The plaintiff alleged three causes of negligence:

(1) That the use of a defective and unsafe socket with defective insulation.

(2) That the defendant negligently failed to furnish a lower and safe voltage after demand.

(3) That the defendant, through a defective transformer and defective appliances, allowed an excessive, dangerous and high current to be used, which caused the death of the intestate.

The defendant denied the negligence, pleaded contributory negligence on the part of the intestate and *ultra vires,* in that the town exceeded its powers in putting in private power and lights.

The intestate was a son of the owner of the building, which he had used for a garage and which had been wired some years for lights and

power. At the time of his death, the intestate was an employee of the Chero-Cola Bottling Company, its manager was his brother, and the vice-president of the company his brother-in-law.

Some weeks before the death of the plaintiff's intestate and before the machinery for the bottling plant was placed, the bottling company induced the town to change the wiring of the building and directed where the lights were to be placed and their arrangement. The employees of the town furnished the wire, cords, rosettes, and sockets, and the bottling company accepted and paid for the work. The electric bulbs were purchased by the bottling company, which put them in itself. The building was wired for lights and power, for a current of 220 volts. The lamp at which the plaintiff's intestate was killed was placed under the direction of his employer, the Chero-Cola Company, one of them being this light over the front end of the soaker, and two or three feet above it, hanging from the ceiling and placed there for the use and the operation of the machine. There was a shaft over the soaker with a pulley, over which a belt ran. When this belt came off the employees would go up on the soaker and put on the belt. The manager of the Chero-Cola plant and another stood on the soaker just a few minutes before the intestate was killed, and the latter held up the light to help in putting the belt back on the pulley, and received no shock. It was in evidence that the intestate got up on the soaker to fix the belt and then sat down on the end of the soaker, and, taking hold of the lamp as he got up, received the current that killed him, by making a circuit.

The first assignment of error is that the court sustained the defendant's objection to a question put to the plaintiff's witness as to the work done by him while not in the employment of the town after the boy was killed. This cannot be sustained.

The second assignment of error is that when the same witness was asked, "In your opinion, what amount of voltage was probably the cause of his death?" the defendant objected, and the court said, "I think it would be competent to ask him what is the amount of voltage which would produce death? But as to the amount that was the cause of his death, how could he know the probable amount of the current?"

We do not think that this was any expression of the judge's opinion, upon the facts, which is the ground assigned for the objection. Besides, this last exception was not taken at the time and could not be considered. If taken at the time, the court could have explained to the jury that he was not expressing any opinion as to the weight of the evidence. *Bloxham v. Timber Corporation,* 172 N. C., 37; *Harrison v. Dill,* 169 N. C., 542.

This witness was also asked if he had any opinion as to the amount

of voltage that did kill the intestate, to which he replied: "In my opinion, in this special case, taking into consideration the room as it shows there, there is nothing less than 500 to 800 that went through his body." On objection by defendant, this testimony was properly excluded. *Kerner v. R. R.,* 170 N. C., 94. This seems to have been the opinion of the witness from the evidence, taking into consideration the room and other surroundings. It was the province of the jury to pass upon the evidence and form a conclusion, and not for the witness. *Kerner v. R. R.,* 170 N. C., 94; *Gray v. R. R.,* 167 N. C., 433.

Assignments of error 4, 5, 6, and 7 were presented together and were all based upon the court excluding questions of the same nature, upon objection by the defendant. These questions were:

"Regardless of lights, what kind of a socket should be used on a 220 current in a building with a cement floor, as a bottling plant, where a metal soaker and other bodies are sitting?"

"Was the use of a brass socket over the soaker at the place, in your opinion, proper protection of human life?"

"What kind of a socket should have been used, under the circumstances, in the Chero-Cola Bottling Plant for the protection of human life?"

"In your opinion, would the use of a brass socket in the plant in which the intestate was killed having a cement floor, if the jury should so find, and the jury should further find that it was hung over a metal machine, or soaker, state, in your opinion, what kind of socket, whether metal or porcelain, or otherwise, should have been used in the protection of human life?"

These were properly excluded because the opinion of the expert upon a hypothetical state of facts was not asked for, but the witness was asked to give his own conclusion as to one of the very matters at issue before the jury and was asked to set his own standard as to what should be done.

The witness had testified that a porcelain socket was ordinarily used in bottling plants; that 220 volts were dangerous to human life; that the young man was killed by an excessive current, and the witness also explained to the jury in detail the construction of porcelain and brass sockets, and the difference between them, and how the current could be gotten from the brass socket. The court merely excluded the individual standard of the witness as to which kind of socket should have been used and his conclusion upon the facts from the evidence which was for the jury to find. *Kerner v. R. R.,* 170 N. C., 94.

Assignments of error 8 and 9 were to the exclusion of questions asked on redirect examination and not responsive to new matter brought out on cross-examination. This rested in the discretion of the trial judge,

and besides, it does not appear what the answer of the witness would have been.

Assignment of error 10 was to the exclusion of a question to the same witness: "Can you form an opinion satisfactory to yourself as to whether or not the brass socket introduced in evidence and exhibited to you is a sufficient or proper protection to use on a voltage of 220?" It seems that the witness had already substantially answered this question.

Assignments 11 and 12 were to the exclusion of questions asked on the second redirect examination about matters not referred to in the cross-examination, and it does not appear what the answers would have been.

Assignments 13, 14, 15, 16, and 17 are to the exclusion of questions on redirect examination not responsive to new matter in cross-examination, and there is no indication what the answers would have been.

Assignment 18 is to the exclusion of a question, but it does not appear what the answer would have been.

Assignment 19 was to the exclusion of a question as to matters not connected with the case, but as to general matters occurring long prior to the time this action accrued.

Assignments 20 and 21 are that the court limited the question as to sockets in general use by restricting the evidence to "in common, general and approved use," which was not erroneous.

Assignments 24, 25, 26, 27, and 28 are that the court in charging upon the liability of the defendant in furnishing the socket for the Chero-Cola Company told the jury that the defendant was required to furnish such sockets as were "approved and in general use and reasonably adapted for the purpose for which they were wanted." This seems to be a clear statement of the general rule.

The inside wiring was done and the sockets furnished by the town for the bottling company, which accepted and paid for them, and they became its property. The town owned the wires in the street, which it connected with the wires of the bottling company and furnished the current. The controversy in this case is over a brass socket inside the mill, the plaintiff contending that porcelain was the kind in general use, and the defendant contending that brass sockets were approved and in general use. The defendant, in furnishing the socket, is subject to the same rule that would apply to any contractor or other persons doing the work of inside wiring of the house. The witnesses say that a brass socket is safe for 220 voltage and is made for 250 voltage, and that the socket in this case was standard and such as is generally used. The plaintiff's expert witness, Milson, says that the only way the intestate could get the current was by taking hold of the socket between the key and globe. Hammell, another of the plaintiff's experts, said that to

SMITH *v.* COMMISSIONERS.

get the current, one would have to take hold where the socket and lamp come together, and that if the bulb is not screwed on far enough the danger is increased. If this were the case, the negligence was not on the part of the defendant. The defendant town did not furnish the bulbs, which were bought by the bottling company and screwed in by them.

The defendant had nothing to do with the placing of the machinery in the bottling plant, nor was it liable for the moist condition of the cement floor, nor for the placing of the pulley and belt, or the belt coming off the pulley. The defendant could not have foreseen that the soaker would be used as a step-ladder to aid in keeping up the machinery or that its top would be used as a platform.

There was a key to the socket, and it was safe, according to all the witnesses, to take hold of the key or cord or bulb. There is no suggestion that the young man who was killed attempted to either turn on or to turn off the light. His brother, Stokes Smith, had gotten upon and off the soaker several times before the accident, and Mize had stood on the soaker and held the cord a few minutes before the accident. There was evidence that brass sockets were in approved and general use and adapted to the purpose, and that, in fact, they were safer and better adapted than porcelain, which becomes easily cracked, and this defect is not readily discoverable and often becomes dangerous.

In the charge as to negligence the court applied the rule of the "highest degree of care practicable," and also applied this degree to see that they were kept in good order, and there is no exception to the charge as to any negligence of the defendant as to its appliances or inspection of the lights of the Chero-Cola Company. The jury had the benefit of a very clear and full charge, in which the court gave all the instructions asked by the plaintiff, and we find no error in the charge or in the exceptions as to the evidence. There was evidence for the plaintiff, and this is not a new suit. The jury evidently found that the death of the deceased was caused by an accident—the unforeseen and unexpected conduct on the part of the deceased, who probably sat down in his wet clothes on the soaker, a metal box, on wet ground, and took hold of the lamp at the exact place to get the current forming the curcuit that caused his death. The plaintiff's experts testify that this might have happened whether the voltage was 220 or 110, or even 46. The cause of the death may be obscure. It has not been demonstrated with a clearness that satisfied the jury that it was due to negligence on the part of the defendant, and the burden was upon the plaintiff to so satisfy them.

No error.